210     BOYNTON *v.* PHELPS *et al.*     [Sept. T.,

Syllabus.

# CHARLES O. BOYNTON

*v.*

# WILLIAM PHELPS *et al.*

1. RELEASE OF SURETY—*by acts between the principal debtor and the creditor.* If the principal debtor does any act, or makes any agreement, for a valuable consideration, without the consent of the surety, express or implied, and which tends to his injury, or which delays or suspends the right to coerce payment, to the prejudice of the surety, or which shall put the surety in a worse condition, or increase his risk, or impair the ultimate liability over of the principal to him, the surety will be discharged.

2. SAME—*dismissal of a bill for an injunction by the complainant.* A judgment debtor obtained an injunction, restraining the collection of the

judgment, and executed the usual injunction bond, with sureties. Pending the suit, the complainant, without the consent of his sureties, agreed with the owner of the judgment enjoined, a person to whom it had been assigned, that a decree might be entered such as should be deemed necessary to protect the rights of the owner of the judgment, and enable him to collect it, together with interest and costs; but it was stipulated that all claim for damages in consequence of the issuing of the injunction should be waived: *Held*, there being no fraud or collusion shown as between the complainant and the assignee of the judgment, this agreement did not operate to discharge the sureties on the injunction bond.

3. SAME—*where the creditor omits to avail of a levy on personal property.* An execution issued upon a judgment was levied upon personal property sufficient to satisfy the judgment, and a forthcoming bond was given to the officer. Afterwards, the judgment debtor obtained an injunction restraining the collection of the judgment, giving the usual injunction bond. Pending the suit for injunction, the judgment debtor, by stipulation with the owner of the judgment, dismissed the bill on condition no damages should be allowed: *Held*, that the judgment creditor could elect, either to sue upon the injunction bond, or to obtain satisfaction under the levy of his execution, and in choosing the former remedy omitting to avail of the levy upon the personal property, he would not release the sureties in the injunction bond.

4. WITNESS—*competency, under act of* 1867. Where a suit is brought in the name of one person for the use of another, the latter is a "party" to the suit, within the meaning of the second section of the act of 1867, concerning the competency of witnesses, and if such beneficial party be dead at the time of the trial, the opposite party will not be a competent witness to testify on his own behalf, in respect to acts and declarations made by such deceased party in his life time.

5. ADMISSIONS OF RECORD—*obviate the necessity of proof.* Whatever is admitted on the record of a cause need not be proved; so where a plea admits the interest of a beneficial plaintiff in the subject matter of the suit, such interest need not be proved, in the event it becomes necessary that the fact should appear.

6. VERDICT—*put in form by the court.* In an action of debt on a penal bond, it was stipulated the jury might sign and seal their verdict, and leave it with the clerk, and if it should not be in proper form, the court might put it in form without the presence of the jury. The verdict, on being opened, was found to read thus: "We, the jury, find the issues joined for the plaintiffs, and assess the damages at $2408.14." The court directed it to be put in this form: "We, the jury, find the issues in favor of the plaintiffs, and find the debt $2700, and the damages $2408.14:" *Held*, there was no error in the action of the court.

APPEAL from the Circuit Court of Kane county; the Hon. SILVANUS WILCOX, Judge, presiding.

The opinion states the case.

Mr. R. L. DIVINE, for the appellant.

Mr. A. B. COON and Mr. CHARLES KELLUM, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of debt, brought, in 1858, to the DeKalb circuit court by William Phelps, Albert G. Robb and John H. Ball, for the use of George L. Wood, against Charles O. Boynton, impleaded with Hiram E. Whitney, and by change of venue taken, in 1868, to the circuit court of Kane county. By the death of George L. Wood, the names of his administrator, Lester P. Wood, and his administratrix, Margaret Wood, were inserted in the record.

The action was brought on an injunction bond, in the usual form, executed by Hiram E. Whitney and Charles O. Boynton and George Walrod, the latter as sureties, to the above named plaintiffs.

The issues were tried by a jury, and after instructions by the court, returned a verdict for the plaintiff for the debt in the declaration mentioned, being twenty-seven hundred dollars, and assessed the damages at twenty-four hundred and eight dollars and fourteen cents, for which judgment was rendered in proper form.

To reverse this judgment, the defendant appeals to this court, assigning several errors, which may be properly considered under the point he has made and elaborately argued, and that is, that the stipulation of the complainant, Whitney, in the bill for an injunction, to dismiss the bill, without the knowledge or consent of his surety in the injunction bond, operated as a release of the surety.

It is hardly worth while to consume time in discussing any other proposition, as the whole case hangs upon that.

Appellant has labored this point, and presented in support of his views, first, a printed brief of sixteen pages, filed October 18, 1869; a written argument, accompanied by a manuscript opinion of the supreme court of Michigan in an attachment case, filed November 3, and a written argument in conclusion, filed November 26, 1869, all of which we have read, and we have given them all the consideration the question discussed demands.

The case has been twice before this court for consideration. On the first occasion, the judgment was reversed for error in sustaining a demurrer to certain pleas alleging fraud in procuring the dismissal of the injunction suit; the other, on account of a variance between the record described in the declaration and the one given in evidence.

To understand the case, it is only necessary to state a few leading facts. On the 29th of October, 1855, one Albert G. Robb recovered in the Cook circuit court two judgments against Hiram E. Whitney. On the same day, executions issued to the sheriff of DeKalb county, who was William Phelps, who proceeded to levy the same, and did levy them, upon personal property of Whitney sufficient to satisfy the executions. On the 9th of February, 1856, Whitney filed his bill of complaint in the Cook circuit court, making Robb, the execution plaintiff, one John H. Ball and sheriff Phelps the defendants, praying to restrain them from enforcing the collection of the judgments. An injunction was granted, upon the execution of a bond by Whitney, with appellant, Boynton, and one George Walrod as sureties, in the penal sum of twenty-seven hundred dollars, conditioned as the law required.

At the special June term, 1857, of the Cook circuit court, the bill was dismissed and the injunction dissolved, whereupon this action was brought upon the bond, in the DeKalb circuit court, in 1858. In the meantime, the judgment, had been

214 .Boynton *v.* Phelps *et al.* [Sept. T.,

Opinion of the Court.

assigned to George L. Wood, and the suit was brought for his use, and so alleged in the declaration.

The dismissal of the injunction bill was in accordance with this stipulation :

"It is hereby stipulated and agreed by and between Hiram E: Whitney, complainant in the above entitled suit, and George L. Wood, the assignee of the two judgments mentioned in the bill of complaint filed in this cause, that the said defendants shall be at liberty to have a decree entered against the complainant in any form which may be deemed necessary to protect the rights of the said assignee of said judgments, .and that the attorney or counsel of said George L. Wood shall have the right to the entry of any order in said suit which may be necessary to carry out the decree and collect the judgments before referred to, with interest and costs to be taxed. It is agreed on the part of said Wood that all claim for damages, in consequence of the issuing of the injunction on the part of the said defendant, or himself, shall be waived. It is further agreed and stipulated by and between the parties that this stipulation may be filed with the clerk of the court, and the decree and orders entered at any time the said George L. Wood, his attorney or counsel, may elect to do so."

Appellant contends this stipulation, entered into without .his consent, was a material alteration of the contract, and released him. Various cases are referred to on this point, and an elaborate effort made to bring this case within their range.

We have examined all the cases to which reference has been made by appellant, and draw from them this conclusion, that if the principal debtor does any act, or makes any agreement, for a valuable consideration, without the consent of the surety, express or implied, and which tends to his injury, or which delays or suspends the right to coerce payment, to the prejudice of the surety, or which shall put the surety in a worse condition, or increase his risk, or impair the ultimate liability

over of the principal to him, the surety would be discharged. All the cases cited by appellant include some one or more of these, or of cognate, elements.

Appellant, by his undertaking as surety, put himself in the power of his principal, so far as the prosecution of the bill was concerned. He knew perfectly well that the complainant had power, at any time, in his discretion, to dismiss his bill. He knew the court could dismiss it for reasons shown, and he took these risks.

This court said in this case, "no matter from what motive the complainant in the injunction suit may have dismissed it, so as it was not brought about by improper inducements by the defendants in that suit, the sureties could have no cause to complain. The sureties took the risk that the complainant had good cause for the injunction, and that he would conduct it in good faith, but did not undertake that the other parties would not corrupt and bribe him to dismiss a good cause of complaint." 22 Ill. 527.

These are the views this court now entertains upon this point. In the absence of proof of fraudulent combination and conspiracy of Whitney, the principal, and the defendants in the bill, or any of them, the stipulation to dismiss the bill on the condition no damages should be allowed, worked no injury to appellant. It did not, in any respect which we can see, extend his liability, it did not increase his risk, it did not put him in a worse condition, or impair any ultimate liability over to him of the principal, and tended, in no degree, to the injury of the surety.

The manuscript case from Michigan, on which appellant so much relies, has features quite distinguishable from this. There, the writ of attachment was issued against three persons, and levied on a large amount of personal property in the hands of one Orton, and to prevent its removal, Orton caused to be executed and delivered to the sheriff a bond, with the condition, if the obligors should well and truly pay any judgment which might be recovered in the attachment suit within

sixty days after the judgment should be recovered, the obligation should be void. The defendants were the makers of the bond, and the plaintiff the assignee.

On the trial of the attachment suit, the plaintiff, by permission of the court, under one of its rules, discontinued the action as to two of the defendants, and proceeded against one only, recovering a judgment against him of four thousand six hundred and ninety-two dollars, besides costs.

The breach was alleged to consist in the non-payment of this judgment, recovered against one, only, of the parties. The condition of the bond was, we infer, that the obligors would pay such judgment as should be rendered against the three parties to the suit. By discontinuing the suit as to two, and taking judgment against one, only, it became a contract wholly different from the one into which defendant entered. The court say, the bond, when executed, must be considered as tacitly referring to the suit as then constituted in respect to parties, and not as it should, possibly, be thereafter constituted at the instance of the plaintiff, to avoid defeat. The sureties enter into the contract, knowing the risk they incur by the chances which the plaintiff has to recover against the defendants in the writ, and the ability of the latter, in case of defeat, to respond to the plaintiff, or the sureties themselves, if called on.

The ground of this decision is, the increased risk to which the obligors would be subjected, for the court say, in conclusion : " It would also have the effect to compel the sureties to look for indemnity to such defendant, or defendants, as should be left in the case at judgment, instead of the whole number of defendants named in the writ at the giving of the bond, and it might well happen that, in the responsibility of the latter, the sureties would know themselves to be safe, while in that of the former, they would know themselves to be without remedy." This decision was upon a statute of Michigan, of the peculiar provisions of which we have no information, but so far as it asserts a principle, we fully accord

with it, as entirely compatible with the proposition we started on.

Should the law be, as insisted on by appellant, then no appeal from a justice of the peace to a circuit court, or from that court, or any other, to this court, could be dismissed by the appellant without releasing the surety in the appeal bond. The law has never been understood as having such an effect.

We are free to admit, if an appeal, or other proceeding, in which sureties have been required and given, shall be dismissed by the party giving the security, collusively, and for the fraudulent purpose of involving the surety, the party claiming the benefit of the security, if involved in the fraud, should be compelled to forfeit such benefit, but there is no proof of that in this case.

Another point, quite subordinate to the one we have discussed, made by appellant is, that he was discharged from his liability on this bond by the failure and refusal of appellees to make available for the payment of the debt, the security obtained by the levy of the executions on Whitney's property, it being sufficient to satisfy the judgment.

When the facts are considered, the principle of law here invoked will be seen to have no application.

The bond in question was executed after the levy, and after the forthcoming bond was delivered to the officer. The writ of injunction obtained by means of this bond in suit, arrested all further proceedings under the levy. On the dissolution of the injunction, what was the position of the plaintiffs in the execution? They had, or the sheriff for them, a forthcoming bond; they had the injunction bond—if the goods levied on were still *in esse* they had a right to a writ of *venditioni exponas*, or to have a sale by the sheriff without such writ. They, then, on the dissolution, had a choice of remedies, and has it ever been understood a court of law could compel them to elect the remedy? It might be, on a proper case made in equity, a party would be compelled to elect, but no effort in that direction was made by the appellant. He might, perhaps, after

218   ·   BOYNTON *v.* PHELPS *et al.*      [Sept. T.,

Opinion of the Court.

satisfying the condition of the bond, have applied to a court of chancery to be subrogated to the rights of the plaintiffs in the writ of execution, and thereby received the benefits of the levy. The appellees had a clear right of election as to the course most advisable to pursue to obtain satisfaction of their judgment, and we can not say, they violated any recognized principle of law in choosing to proceed on the injunction bond.

In support of appellant's views on this point, he has referred to the case of *Rogers* v. *Trustees of Schools*, 46 Ill. 428.

That case is wholly unlike this. In that, the holder of a note, with personal security given at the time of its execution, received other security on real estate, and destroyed it without the consent of the security; it was held, such destruction operated as a release of the personal sureties.

The other cases to which reference is made, will be found, on examination, to have no greater bearing on this point than the case from 46 Ill. *supra.*

Another point made by appellant is, that Whitney was not allowed to testify in the cause, being called by the defendant for such purpose.

This right is claimed by appellant as one conferred by the act of 1867. It hangs upon the meaning to be given to the term "party," as used in the act.

Keeping in view the purposes of this act, we do not think the term "party" should have that restricted and technical meaning on which appellant insists. It seems to us the design of the legislature was to embrace within it a party who might appear, by the record, to have an interest in the subject matter of the suit. A nominal plaintiff is not, as is well understood, always the real party in interest. Wood, the *cestui que use* in this case, or *usee*, as he is called by appellant, was not in the position of a surviving partner, and, therefore, the citations on that head have no application. He was the only party having any interest in this suit, and was so admitted on the record by appellant in his seventh and eighth pleas. He was dead

when the proposition to make a witness of Whitney, and of the appellant, Boynton, was made to the court.

The second section of the act of 1867 clearly contemplates that the parties to a suit, when one of them is offered as a witness against the other, shall occupy equal ground; that both shall be present in the flesh, or have the power to be present. If it were not so, the greatest injustice would be the result. A swift and willing living witness would have the whole case in his own power, and a door to perjury would be opened, so wide and so inviting as to require great moral firmness to decline an entrance into it. It would be a temptation very many would not be able to resist.

It may be admitted, there was no legal necessity for the statement in the declaration that Wood was the beneficial party, but it was so stated, and being by the record such a party, and as admitted by the pleas, and he dead, the opposite party could not be a witness against him, or Whitney, by whose testimony the dead man's acts and declarations were sought to be brought up against him, to condemn him. His administrator would be in no condition to avail of any explanations that the deceased, if living, might have made.

That a party for whose use a suit is brought is the real party to the action, has been often held by this court. *Dazey* v. *Mills, for the use of Pinkham*, 5 Gilm. 67. These considerations dispose of all the objections made to the refusal of the court to permit Whitney to be a witness for any purpose against the deceased Wood, or to his prejudice.

As to the objection of absence of proof to establish Wood's interest in this bond, that stands admitted on the record by the eighth plea of appellant, and it is a rule, whatever is admitted on the record need not be proved, and the additional plea of defendant, first filed on the last remand of this cause, admits the same, and avers that Wood had the charge and control of the chancery suit, and that it was with him Whitney entered into the stipulation to dismiss the injunction bill, and in it he is named as the assignee of the judgments.

Another point made by appellant is, that the court excluded evidence of Whitney's declaration in regard to the dismissal of the chancery suit, the proof being before the court establishing a *prima facie* case of conspiracy between him and the deceased Wood, as the representative of the defendants in the chancery suit, who were the obligors in the bond sued on.

We look in vain into the record to discover marks of any conspiracy, or fraudulent agreement, between Whitney and Wood, resulting in the stipulation entered into between them. We perceive in the stipulation itself no indication of one, but do see in it a legal consideration therefor, namely : a release of all damages for suing out the writ. If Whitney acted in this in bad faith toward his sureties, it was their misfortune to have trusted their interests with one so unworthy. But nothing was shown to implicate him or Wood in any conspiracy, or fraudulent combination, to the prejudice of the sureties. The result of the injunction suit was uncertain, and it was by no means sure the equities alleged in the injunction bill could have passed the ordeal of severe judicial criticism, and deliberate examination, after a hearing from the other side. By affidavits, or by answers, the defendants might have demolished the structure the complainants had erected, and thereby mulcted him and his sureties in heavy damages.

But if a conspiracy had been established by proof *aliunde,* then there could be no doubt the acts and declarations of any one of the conspirators, in furtherance of the unlawful object, could be given in evidence in a proper case. In such a case as this, the law will not permit one of the actors to raise the cry of a conspiracy, got up, perhaps, by himself, and charge another who is dead, and can not speak to it, to have been a party to it. What we have here said, disposes of all the questions necessary to be considered, as arising on the pleadings and instructions.

Something has been said about the change by the court in the verdict of the jury.

There was the usual stipulation, as shown by the record, that the jury might sign and seal their verdict, and leave it with the clerk, and if it should not be in proper form, the court might put it in form without the presence of the jury. The verdict was sealed, and on opening it, it was found to read in this way : " We, the jury, find the issues joined for the plaintiffs, and assess the damages at. $2408.14."

The form which it was made to assume by the court was : " We, the jury, find the issues in favor of the plaintiffs, and find the debt $2700, and the damages $2408.14."

The action was debt for the penalty of a bond. This proved itself. The finding of the jury could add no additional force to it. They were only to find the damages, which would be the amount of the judgments which had been enjoined, and the interest upon them, which made up the damages. We see no error in the action of the court in this particular.

An objection is also made, that the court permitted the testimony of Hansha and Champlin to go to the jury, for the purpose of showing that Walrod and J. H. Boynton had received from Whitney indemnity, in the shape of some goods retained by them, against this bond, but J. H. Boynton, and the defendant, C. O. Boynton, both testified that they had not received, in any shape, any indemnity whatever, and what Hansha and Champlin said could not, therefore, have had any influence upon the verdict. If we thought it might, possibly, have had some influence, we would not reverse the judgment for admitting the testimony, satisfied, as we are from the whole record, that substantial justice has been done.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*