GEORGE W. HOWELL V. ALMA MILLING COMPANY
ET AL.

FILED JANUARY 17, 1893.   No. 4043.

1. **Parties:** TRANSFER OF CAUSE OF ACTION: SUBSTITUTION. Where a plaintiff transfers his interest in the subject of the action to another during the pendency of the cause, the suit may be prosecuted to final termination in the name of the original plaintiff, or the person to whom the transfer is made may be substituted as plaintiff.

2. ——: ——: ——: APPEAL BOND: SURETY. A bank brought an action in a county court on two promissory notes held by it as collateral security, and recovered judgment thereon against the maker. The defendant took an appeal to the district court, the usual statutory bond being executed. While the cause was pending in the appellate court the indebtedness due the bank by the pledgor of the notes was paid, after which one H., to whom the said notes, prior to the bringing of the suit, had also been pledged as collateral security for a debt due him, subject to the claim of the bank, was substituted in place of the bank as plaintiff, who recovered judgment against the maker of the notes. *Held,* That the surety in the appeal bond or undertaking was not released by the substitution of H. as plaintiff.

3. **Appeal Bond:** LIABILITY OF SURETY. The mere continuance of a cause in an appellate court by stipulation of the parties, without the consent of the surety in the appeal bond will not operate to discharge such surety.

4. ——: ——. By an agreement between the parties to an appeal pending in the district court, a judgment was rendered therein against the party appealing, without the knowledge or consent of the surety on the appeal bond. *Held,* In the absence of proof of fraud or collusion between the principal and the creditor, that the stipulation for judgment did not release the surety from liability on the appeal bond.

ERROR from the district court of Harlan county. Tried below before GASLIN, J.

*Smith & Solomon* and *Morning & Keester,* for plaintiff in error.

*Case & McNeny* and *C. C. Flansburg, contra:*

The defendant in error Goble is not liable upon the bond, because the plaintiff in error was substituted for the Commercial National Bank without his consent after the giving of the bond and during the pendency of the action in the district court. (*Phillips v. Wells*, 2 Sneed [Tenn.], 154; *Harris v. Taylor*, 3 Id., 541; *Irwin v. Sanders*, 5 Yerg. [Tenn.], 287; *Smith v. Roby*, 6 Heisk. [Tenn.], 546.)

NORVAL, J.

This action was brought by the plaintiff in error upon an appeal undertaking. There was judgment in the court below for the defendants. To reverse this judgment a petition in error was filed in this court. The facts briefly stated are these:

On the 1st day of November, 1885, the Nebraska Lumber Company turned over a large number of notes to the Commercial National Bank of Omaha as collateral security for money borrowed. Among the notes so turned over were two against the Alma Milling Company; one for $361.85 and the other for $326, exclusive of interest. Afterwards, on the 30th day of December, 1885, the Nebraska Lumber Company assigned, subject to the rights of said bank, the same securities, including the said two notes executed by the Alma Milling Company, to the plaintiff, as collateral security for a debt from said lumber company to plaintiff.

On the 7th day of June, 1886, the said Commercial National Bank brought suit in the county court of Harlan county against the said Alma Milling Company upon the two notes above mentioned, and recovered judgment thereon for the sum of $723.37 and costs. From this judgment the Alma Milling Company took an appeal to the district court, the defendant in error F. E. Goble signing the appeal bond or undertaking as surety; which bond was con-

9

ditioned that the principal should prosecute its appeal to effect without unnecessary delay, and if judgment should be adjudged against it on appeal, satisfy such judgment and costs.

While said cause was pending on appeal in the district court the claim of the said Commercial National Bank against the Alma Milling Company, for the payment of which said notes were held as collateral security, was paid and discharged in full, so that said bank was no longer the real party in interest in said suit. The collateral notes were turned over to the plaintiff in error by virtue of the agreement above referred to, made between the Nebraska Lumber Company and said George W. Howell. After the notes were so turned over on the 23d day of November, 1881, the said Howell, the plaintiff in error herein, was substituted as a party plaintiff in said action in lieu of the Commercial National Bank. It was agreed between the plaintiff in error and the Alma Milling Company that in case the latter would consent or allow the former to be substituted as plaintiff for the bank that said cause should be continued to February 20, 1888; that in accordance with said agreement said cause was so continued without the knowledge or consent of the surety. Said cause was subsequently continued from time to time by stipulation of parties in open court until May 6, 1889, when judgment was rendered against said Alma Milling Company by agreement between it and the plaintiff for the sum of $900 and costs of suit. Execution has been issued on said judgment and returned unsatisfied for want of property whereon to levy. Whereupon this action was brought upon said appeal undertaking to recover the amount of said judgment and costs.

It is contended by counsel for defendants in error that the substitution, after the cause was appealed to the district court, of plaintiff in error as party plaintiff in place of the Commercial National Bank, the original plaintiff, without

the knowledge or consent of F. E. Goble, the surety in the appeal bond, operated as a release of the surety. We consider the position altogether untenable. We are unable to perceive how the substitution of George W. Howell as plaintiff in lieu of the bank could have the effect to discharge the surety. The reason for the substitution arose solely from the fact that the indebtedness of the Alma Milling Company to the bank had been fully paid off after the appeal had been taken. The bank, therefore, no longer had any interest in the litigation. The notes declared on, prior to the institution of the action, had been pledged by the Nebraska Lumber Company to plaintiff in error as collateral security for its indebtedness to him, so that when the claim of the bank was satisfied, plaintiff in error was entitled to prosecute the suit either in his own name or in the name of the bank.

Section 45 of the Code of Civil Procedure, which was in force when the appeal was taken, provides that "An action does not abate by the death, marriage, or other disability of a party, or by the transfer of any interest therein, during its pendency, if the cause of action survive or continue. In the case of the marriage of a female party, the fact being suggested on the record, the husband may be made a party with his wife; and, in case of the death or other disability of a party, the court may allow the action to continue by or against his representative or successor in interest. In case of any other transfer of interest, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action." There can be no doubt that under this statute the payment by the Nebraska Lumber Company of its indebtedness to the bank did not abate the action on the collateral notes. The section quoted confers ample power upon a court, where there has been a transfer by the plaintiff of his interest in the subject of the action during the pendency of the suit, to allow the person to whom the transfer

is made to be substituted in place of the original plaintiff.
The substitution was made according to the provision
of the statute. It is conceded that plaintiff in error had
a right to be substituted as plaintiff in place of the
bank, but it is urged that the surety is not liable on his
bond for a judgment obtained by the substituted party
against the principal. The law permitting the substi-
tution of parties in case of the transfer of interest must
have been known to the surety in the appeal undertaking
when he became surety, and he must be held to have signed
the bond subject to such contingency. In this case it is
stipulated that at the time Goble signed the appeal under-
taking he knew that the notes were held as collateral secu-
rity, and was informed and believed that the claim of the
bank against the Alma Milling Company would be paid
by the collection of other securities held by the bank. The
surety knew, in case the bank ceased to have any interest in
the notes sued on during the pendency of the action, that the
court had the power to permit the substitution of the party
interested in the subject of the suit. The surety took this
risk of substitution. He was not in the least prejudiced by
the change of plaintiffs. The cause of action remained the
same. He was not placed in a worse situation, for had
there been no substitution Howell could have prosecuted
the suit to judgment in the name of the original plaintiff.
(*Magenau v. Bell*, 13 Neb., 247; *Temple v. Smith*, Id., 513;
*Dodge v. Omaha & Southwestern R. Co.*, 20 Id., 276.)

The undertaking of the surety was that his principal
should prosecute its appeal to effect without unnecessary
delay, and that the principal should satisfy any judgment
which should be rendered against it in the appeal. The
surety was responsible for any judgment which should be
rendered against the principal on the cause of action sued
on, whether obtained by the original plaintiff or a substi-
tuted party. We are satisfied that the substitution of
Howell as plaintiff in lieu of the bank did not release the

surety from liability on the appeal undertaking. (*Hanna v. International Petroleum Co.*, 23 O. St., 622; *Christal v. Kelly*, 88 N. Y., 285; *Sherry v. State Bank of Ind.*, 6 Ind., 397.)

There are some Tennessee decisions cited in the brief of counsel for defendants in error which are not in harmony with the views we have already expressed, but they are not well considered cases, and are in conflict with the weight of authority in this country.

The case of *Andre v. Fitzhugh*, 18 Mich., 93, is distinguishable from the one at bar. There an attachment suit was commenced against three defendants, and the sheriff levied the writ upon certain personal property. To prevent the removal of the attached property, a statutory bond with sureties was executed, conditioned that if the obligors should well and truly pay any judgment which might be recovered by the plaintiff in his attachment suit within sixty days after the judgment should be recovered, then the obligation should be void, but otherwise of force. On the trial of the attachment suit the plaintiff discontinued as to two of the defendants in attachment without the consent of the sureties, and obtained judgment against the third for $4,692.61. The judgment not having been paid, suit was commenced upon the bond to recover the amount of said judgment. The supreme court ruled that the discontinuance as to the two defendants in attachment operated as a discharge of the sureties on the bond. This decision is placed upon the ground that the discontinuance as to the two defendants increased the risk of the sureties. The court in the opinion say: "The sureties on entering into the contract measure the risk they incur by the chances which the plaintiff has to recover against the defendants in the writ and the ability of the latter in case of defeat to refund to the plaintiff or sureties themselves, if called on." The court in speaking of such change of parties say: "It would have the effect to com-

pel the sureties to look for indemnity to such defendant or defendants as should be left in the case at judgment, instead of the whole number of defendants named in the writ at the giving of the bond; and it might well happen that in the responsibility of the latter the sureties would know themselves to be safe, while in that of the former they would know themselves to be without remedy."

In the case we are considering, the risk of the surety was not increased by the substitution of Howell as plaintiff; hence the Michigan case is not in point. The fact that the original suit was continued from time to time by agreement, without the consent of the surety, did not operate as a release of the latter, nor did the rendition of the judgment by consent of the principal in the bond have the effect to discharge the surety from liability. The court had the power to grant the continuances irrespective of the agreement of the parties. Had it done so on the application of either party without the consent of the other, the surety would have been bound, since his undertaking contemplated a possible exercise of such power. The fact that the continuances were granted upon the stipulation of the parties does not, we think, make any difference. By the execution of the appeal bond the surety conferred upon his principal authority to do everything that was necessary to be done in the case. The condition of the bond was sufficiently broad to include whatever judgment might be rendered against the principal in the appeal case, whether by agreement or otherwise. In the absence of proof of fraud or collusion between the principal and the creditor, the stipulations did not have the effect to release the surety from liability on the appeal bond. (*Boynton v. Phelps* 52 Ill., 210; *Bailey v. Rosenthal*, 56 Mo., 385; *Chase v. Beraud*, 29 Cal., 138.)

*Boynton v. Phelps, supra*, was an action against a principal and his sureties upon an injunction bond given in a suit brought by a judgment debtor to restrain the collec-

tion of a judgment at law. The plaintiff in the injunction suit, without the consent of his sureties, dismissed his action by agreement with the owner of the judgment. It was held, in the absence of fraud and collusion between the parties, that the mere dismissing of the injunction suit by consent did not discharge the sureties on the bond.

In the Missouri case cited the defendant appealed from a judgment rendered by a justice of the peace, and in the appellate court the plaintiff took a voluntary nonsuit, which was subsequently, during the same term, set aside by agreement between the parties without the consent of the sureties on the appeal bond. The case was then tried and judgment was rendered against the defendant and his sureties. It was held that the sureties were liable for such judgment.

In *Chase v. Beraud, supra,* it was decided that where an appeal was dismissed by agreement between the principal in the appeal bond and the creditor, it operates as an affirmance of the judgment and charges the surety in the appeal bond.

In *Ammons v. Whitehead,* 31 Miss., 99, certain parties became sureties on three bonds given to secure appeals from three judgments rendered by a justice of the peace against the same defendant and in favor of the same plaintiff. In the circuit court the three cases were consolidated by agreement of the parties and afterwards, by stipulation between the principal and creditors, without the assent of the sureties, a judgment was rendered in said court against the principal and sureties with stay of execution for twelve months. It was held that the sureties were not released from their liability. This being a well considered case we reproduce a portion of the opinion here. The court said that "the bonds were executed for the purpose of having the cases retried in the circuit court, and their legal effect was to give that court jurisdiction to determine the cases, and to render judgment, if necessary, against both the

principal and sureties. Their condition was, substantially, that if the judgments should be there affirmed, they would abide by and perform the judgment of the court to be rendered thereupon. From their very nature, the obligation of the sureties was contingent and uncertain. They were given for the express purpose of enabling the principal to carry on the litigation, and, in the event that he should be unsuccessful, the law under which they were given provided that the judgment should be rendered against both the principal and sureties. Even if the sureties are not to be considered bound as parties to the judgment, so as to be debarred of the right to complain in a collateral proceeding of what was done in the proceeding, the necessary legal effect of their execution of the bonds was to confer upon the principal full power to do whatever he might deem necessary and proper in defending or determining the suits in the circuit court. The principal might have withdrawn all defense and submitted to judgments in the three cases immediately upon their presentation in the circuit court, and upon the same reason he was authorized to compromise the suits upon terms advantageous to himself. This was no violation of the obligation of the sureties, nor a variation of the terms of their obligation, for that was entirely contingent and uncertain, except that the parties had, by the necessary legal effect of the act, submitted themselves to whatever might be done in the determination of the suit by their principal, under the sanction of the court. There was no fixed obligation, the terms of which were varied by the creditor and principal, so that the sureties were deprived of the right of subrogation; nor did the stay of execution deprive them of any right or security which existed in their behalf before the rendition of the judgment and the entry of the stay. And whether the sureties be regarded as parties to the judgment, and as such bound by the proceedings in the suit, or as bound by the action of their principal by reason of the power necessarily

conferred upon him by the purpose and legal effect of the bonds, it is clear that the sureties are not within the rule which discharges such parties in consequence of indulgence given to their principal."

The cases on which defendant relies are not in point, as a brief reference to them will show. In *McKay v. Dodge*, 5 Ala., 388, two parties agreed to submit certain matters in dispute between them to the award of certain specified persons. Afterwards a third person signed, as surety, a bond for one of the parties, conditioned that the principal would perform the award which might be made against him on the submission. Subsequently, without the consent of the surety, by agreement between the parties two persons were substituted in place of two of the arbitrators, who failed to attend, and an award was made. The court held in an action on the bond that the change in the arbitrators was such an alteration of the original contract as exonerated the surety from liability. It is plain that there was a material change in the contract. The surety obligated himself that his principal should perform an award made by certain designated arbitrators, and not one made by any other or different person. The change of arbitrators was a new contract, which was not binding on the surety. *Johnson v. Flint*, 34 Ala., 673, was a suit on a bond executed to secure an appeal of a cause to the supreme court. In the appellate court an agreement was entered into between the parties to the appeal, without the knowledge or consent of the sureties on the appeal bond, to the effect that the judgment should be affirmed for a specified sum, which was $400 less than the superseded judgment, and that a certain mill and machinery in controversy were to be the property of the appellee. It was held that the sureties on the bond were released. The ground of this decision is that by the new agreement entered into without the consent of the sureties, founded upon a sufficient consideration, by which the parties stipulated for mutual advantages, the

principal was precluded from prosecuting his suit to effect. In the case at bar the contract of the sureties was not varied or changed. The agreement between the creditor and principal, that judgment should be rendered against the latter, was a mere voluntary and discretionary exercise of authority on the part of the principal. He secured no concessions or advantage for signing the agreement. There was merely a waiver by the principal of his defense to the suit, if he had one, and of such a waiver all the authorities hold the surety cannot take advantage. We are persuaded that the mere fact that the principal consented to the rendition of the judgment does not affect the liability of the surety. *Johnson v. Planters' Bank*, 43 Am. Dec. [Miss.], 480, was an action against Johnson as surety on a promissory note. The principal on the note had died and his estate was regularly administered, but the note had not been presented as a claim against the estate within the time prescribed by statute. It was decided that the surety was not thereby discharged. The case lacks analogy and is not an authority on the question we are considering. The other cases cited by counsel for the defendant are not in point.

We are forced to the conclusion that the district court erred in holding that the surety was not liable. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.

THE other judges concur.