## NATIONAL SURETY CO. v. SCALES.

No. 8611—Opinion Filed March 26, 1918.

(171 Pac. 922.)

(Syllabus.)

1. **Appeal and Error — Supersedeas Bond After Dismissal by Stipulation — Right of Action.**

Grace Scales, a minor, recovered a judgment in the sum of $1,177 against the Missouri, Oklahoma & Gulf Railway Company, as payment for right of way through her land in Hughes county. From this judgment the railway company appealed to the Supreme Court, and for the purpose of superseding the judgment executed a supersedeas bond with the National Surety Company as surety thereon. Pending the appeal negotiations for a settlement of the judgment were entered into between the attorneys for Grace Scales and the attorneys for the railroad company, but were never completed, and pending the negotiations the case was dismissed in the Supreme Court upon stipulation signed by the attorneys for the respective parties. Held, that in an action by the plaintiff against the surety company on the supersedeas bond the evidence established the above facts. and that the same did not constitute a defense to the action.

2. **Same — Liability of Surety on Appeal Bond.**

Where an appeal bond is dismissed in the Supreme Court upon the written stipulations of the attorneys for the plaintiff in error and the attorney for the defendant in error, such dismissal does not release the surety from liability on the appeal bond.

Error from District Court, Hughes County; Tom D. McKeown, Judge.

Action by Grace Scales against the National Surety Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Maxey & Brown, for plaintiff in error.

H. T. Anglin, for defendant in error.

RAINEY, J. The facts necessary to a determination of the questions involved in this case are substantially as follows: In March, 1911, Grace Scales, plaintiff in this action, secured a judgment in the district court of Hughes county against the Missouri, Oklahoma & Gulf Railway Company in the sum of $1,177, as payment for a right of way through her land in said county. From this judgment the railroad company appealed to the Supreme Court of this state, and, for the purpose of superseding the judgment and staying execution, executed a supersedeas bond in the sum of $2.345, with the National Surety Company, defendant herein, as surety thereon. On the 10th day of September, 1913, the appeal was dismissed by the Supreme Court, pursuant to the following stipulation:

"Stipulation for Dismissal.

"It is hereby stipulated and agreed by and between the parties hereto that the above and foregoing appeal may be dismissed with prejudice to future action at the cost of plaintiff in error."

The judgment not having been paid by the railroad company, Grace Scales instituted the instant action to recover against the National Surety Company on the supersedeas bond. The defense alleged in the answer of the surety company is that after the appeal was timely filed in the Supreme Court, and in the latter part of the year 1912, and in the early part of the year 1913, negotiations were entered into between Grace Scales, the plaintiff. and the Missouri, Oklahoma & Gulf Railway Company, for a compromise of the judgment, as a result of which an agreement of settlement was reached between the said Grace Scales and the Missouri, Oklahoma & Gulf Railway Company, whereby the railroad company paid to Grace Scales the sum of $150 cash and gave its duly executed note for the sum of $877.14; that said note was delivered to the plaintiff and the cash paid was accepted by her in full satisfaction of the judgment; that the plaintiff had entered into the stip-

ulation above recited for a dismissal of the suit pending in the Supreme Court; and that the said acts were without the knowledge or consent of the surety company.

The evidence discloses that Warren & Miller and Ralph P. Welch, attorneys of Holdenville, Okla., represented Grace Scales in the condemnation proceedings and in the negotiations for the settlement of the judgment after the case was appealed to the Supreme Court, and that the railroad company was represented by its attorneys, J. C. Wilhoit and E. R. Jones. On October 15, 1912, the attorneys for the railroad company wrote Warren & Miller as follows:

"Re Grace Scales v. M., O. & G.

"Some time ago your Mr. Miller talked with me with reference to the settlement of the condemnation case of Grace Scales. The amount of the judgment was $1,177. I suggested to him that if they would accept a a long time not [note] we might effect a settlement and get rid of it. I would be glad to hear from you and see if we cannot get it wiped off. If we cannot make settlement will you kindly sign the inclosed stipulation extending time within which to serve brief."

On October 16, 1912, Warren & Miller replied to this letter, stating that Mr. Welch, who was associated with them in the case, had informed them that he was authorized by Mr. Scales, father of Grace Scales, who was a minor, to accept a note bearing interest at 8 per cent., due in one year, provided the $150 was paid at once; that the $150 was their fee; and that they would like to have that paid and a note given for the balance. On October 25th Mr. Jones wrote Warren & Miller asking if they could not persuade their client to take 6 per cent. interest on the note they proposed in settlement of the judgment in the case. On October 31st Warren & Miller wrote Mr. Jones as follows:

"In the Scales matter, we have seen our client and he agrees to accept a note bearing 7 per cent. interest for the balance due after the payment of $150 in cash, the note to be for one year. This is the very best that he will do and we trust that you will execute the note and send same to us with a check for $150 by return mail; otherwise we are directed to push the case in the Supreme Court to as early a determination as possible. Mr. Scales has refused to allow us to stipulate for a continuance of time for filing brief; and **he says that unless this offer of his is accepted at once. you may consider it withdrawn.**" (Emphasis ours.)

On November 3d, in reply, Mr. Jones wrote Warren & Miller that the railroad

company would accept their proposition and that he would send the $150 voucher and the note down the first of the week, as soon as Mr. Dewar returned to the city. Nothing further was done until April 29, 1913, when the attorneys for the railroad company wrote Warren & Miller, inclosing voucher for the $150 and a note, dated April 1, 1913, in the sum of $877.14, due in one year, with interest at 7 per cent. in favor of Grace Scales, and in the same letter inclosed the stipulation for dismissal of the case in the Supreme Court, and requested two signed copies of the stipulation for dismissal and receipt for the voucher and note. On May 14, 1913, Warren & Miller wrote Mr. Jones as follows:

"In the matter of the Scales condemnation case, we have been unable as yet to get any word from Mr. Scales, directing us to settle the case and accept the note sent us. We are writing him again and when we hear from him will let you know. Pursuant to our talk with Mr. Wilhoit, Sunday, we have cashed the voucher for $150, which was to be credited on the amount and used by us as a payment of our fee. This was satisfactory to our coattorney, Mr. Welch, and we divided the fee with him. If Mr. Scales agrees to accept the note in settlement of the suit we will sign the stipulations and return to you. If he does not accept the proposition, we will return the note to you, and this sum of $150 can be credited on the judgment when the case is finally disposed of in the Supreme Court. This arrangement enables us to collect and use our fee now, which is very satisfactory to us, as we do not think we ought to be compelled to wait on Scales until the close of the litigation."

On August 13th Mr. Jones wrote Warren & Miller as follows:

"I hand you herewith a copy of resolution passed by the executive committee of the board of directors of the railway company on the 11th inst. I take it that this is what you have been looking for for many a day, and I take it further that it will satisfy you in the matter of the acceptance of the note we gave in satisfaction of the Grace Scales judgment, and that you may now dispose of that case in the Supreme Court."

On August 15th Warren & Miller wrote Mr. Jones acknowledging receipt of the resolutions of the board of directors in the Scales matter, and that they had been unable to get any answer to letters written to Mr. Scales about the settlement of the case. and that they were holding the papers sent them in hopes that he would some time decide to accept the note, and in the meantime they supposed it was just as well to

let matters drift. On August 16, 1913, Mr. Jones, in answer to the letter stated:

"I was under the impression that Mr. Scales had agreed to this settlement and that he agreed to it before we executed the note. **The only thing that I care about is that I want the case in the Supreme Court dismissed and don't care to write a brief in the matter and I don't care to have them make an order of dismissal against us. I would rather stipulate for the dismissal.**" (Emphasis ours.)

On August 30th Warren & Miller wrote Mr. Jones as follows:

"We are in receipt of yours of the 29th in reference to the Scales matter and have submitted same to Mr. Welch. We have signed the stipulation for dismissal with two changes, as you will note. We thought that the stipulation should be for the dismissal of the appeal, instead of the cause. We do not see the necessity for stating in the stipulation that the cause has been settled. As a matter of fact we have never been able to get Mr. Scales to answer our letters in regard to the settlement, consequently we have stricken our that part of the stipulation, which recites that a settlement has been made. We believe the amended stipulation as signed will answer the purpose."

In addition to the correspondence above mentioned, Mr. C. W. Miller and Mr. Ralph P. Welch testified positively that neither they nor Mr. Welch ever agreed to accept the note dated April 29, 1913. A part of Mr. Miller's testimony is as follows:

"The object of the negotiation was looking forward to a final settlement by the execution and acceptance of this note. The delivery of the note to us by the Missouri, Oklahoma & Gulf was not accepted by us as a delivery to Mr. Scales or as an acceptance of settlement of that judgment, but was accepted by us with the understanding that we submit the matter to Mr. Scales, and if he agreed to accept the note in satisfaction of the judgment, then it would be accepted by us for him, but Mr. Scales didn't accept it."

The conversation with reference to cashing the $150 voucher, as testified to by the witnesses for the plaintiff, was that Mr. Wilhoit had advised them to cash the check for $150, and that, in the event Mr. Scales did not accept the note, the $150 could be credited on the judgment which was done.

Mr. Wilhoit did not recall the substance of the conversation, but stated that he probably made the statement testified to by the attorneys for the plaintiff, since at that time the attorneys for the railroad company were in default of their brief in the Supreme Court and were practically out of the Su-

preme Court anyway; that at the time of the conversation he was in serious doubt as to whether the Supreme Court would grant the attorneys for the railroad company permission to file a brief, inasmuch as they had obtained continuances two or three times; that they would probably have made some effort to brief the case in the Supreme Court rather than have had the court dismiss it; but that they were very desirous of getting the stipulation for dismissal, as they did not want to write a brief, especially in view of the fact that there was not much chance of reversing the case, and they did not want the Supreme Court to dismiss it for their failure to file brief. Mr. Wilhoit further testified that the attorneys for the railroad company believed the settlement had been consummated, or that they never would have gone to the trouble of securing the note.

As a ground for reversal, the surety company contends that the district court erred in holding that the facts proven at the trial did not constitute a compromise and settlement of the plaintiff's judgment after the case had been appealed to the Supreme Court. We have examined the evidence, which is substantially as above stated, and are of the opinion that the court would not have been authorized by the evidence to have made any other finding. It will be noted that the only acceptance by the attorneys for the plaintiff of the proposition for settlement was in the letter dated October 31, 1912, in which letter the attorneys stated that Mr. Scales had agreed to accept a note due in one year, and "unless this offer of his is accepted at once, you may consider it withdrawn." The note was not executed until April 1, 1913, and was sent to plaintiff's attorneys on April 29, 1913. After the delivery of the note to the attorneys for the plaintiff, neither they nor Mr. Scales accepted the note in settlement of the judgment. If the plaintiffs' attorneys had agreed to the proposed settlement, it would not have been binding on the plaintiff, for it is well established that an attorney cannot compromise his client's cause of action without his client's consent. 2 Ruling Case Law, § 75, p. 995; Turner v. Fleming et al., 37 Okla. 75, 130 Pac. 551, 45 L. R. A. (N. S.) 265, Ann. Cas. 1915B, 831; Hamberger v. White, 54 Okla. 736, 154 Pac. 576.

It is urged that the signing of the stipulation for the dismissal of the appeal had the effect of discharging the surety on the appeal bond. We do not think so, in the light of the facts as disclosed by the record in this case. It appears from the testimony of defendant's own witnesses that the rail-

road company was practically out of court, and that the company was extremely anxious to have the case dismissed on stipulation, as is evidenced by the letter of August 16, 1913, wherein Mr. Jones stated: "The only thing I care about is that I want the case in the Supreme Court dismissed." We do not think the cases holding that where the obligee puts it out of the power of the obligor to perform the conditions of the bond no recovery can be had on the bond are in point, as the logical deduction to be drawn from the letters and other evidence in this case is that the railroad company in effect procured the dismissal of the appeal and had practically abandoned the case in the Supreme Court.

In the case of Callbreath et al. v. Coyne, 48 Colo. 199, 109 Pac. 428, it is held that the liability of a surety on an appeal bond is fixed by the dismissal of the appeal, and that is also the holding of this court in the case of Crofut-Knapp Co. v. Weber et al., 67 Okla. —, 167 Pac. 464, wherein in the syllabus we said:

"After the time had expired for appeal, and the judgment has become final, and not paid, or otherwise stayed, an action will lie on a statutory supersedeas bond, conditioned for the payment of 'the condemnation money and costs, in case of [the] judgment or final order shall be adjudged against it,' even though the appeal has not been perfected, or fails for want of prosecution."

See, also, McClain v. Starr, 50 Okla. 738, 150 Pac. 666, and Peck et al. v. Curlee Clothing Co., 63 Okla. 61, 162 Pac. 735.

In the case of James A. Chase v. Louis Beraud & Jean Garraud, 29 Cal. 138, the Supreme Court of California held that where an appeal was dismissed on motion of respondent, based upon the written consent of the appellant, the dismissal operated as a affirmance of the judgment and bound the sureties on the appeal bond.

The following quotation from Ann. Cas. 1914A, p. 1149, is pertinent to the question under consideration:

"In accord with the reported case it is generally held that the affirmance of an appeal pursuant to an agreement entered into in good faith by the litigants does not work a release of the obligation of the surety on the appeal bond, although the agreement is made without his knowledge or consent. Drake v. Smythe, 44 Iowa, 410; Ammons v. Whitehead, 31 Miss. 99; Howell v. Alma Milling Co., 36 Neb. 80, 54 N. W. 126, 38 Am. St. Rep. 694; Krall v. Libbey, 53 Wis. 292, 10 N. W. 386; Ingersoll v. Seatoft, 102 Wis. 476, 78 N. W. 576, 72 Am. St. Rep. 892. See, also, Comegys v. Cox, 1 Stew. (Ala.)

262, 18 Am. Dec. 45. Thus in Drake v. Smythe, supra, it was held that the sureties were not released by an agreement between the parties, entered into without the knowledge or consent of the sureties, to affirm the judgment and to extend the time of payment and to stay execution. The court said: 'By the execution of the bond the sureties enabled the defendants to supersede the judgment. The sureties became parties to the record, and were liable to any judgment rendered in the cause within the limit of their obligation. Their relation to the action was not such as gave them any control thereof; they could not dictate to defendant the course he should pursue in the case; he had the full right to do whatever the law authorized in a case where no sureties are concerned. Their position in the case was one of obligation for debts, not of rights in conflict with defendant's rights. They were bound for the judgment which should be rendered against defendant in the progress of the suit. That defendant had the right to stipulate for time upon the rendition of the judgment cannot be questioned. The sureties, then, are bound by that agreement, and are liable upon the judgment.' To the same effect is Ammons v. Whitehead, supra. In Comegys v. Cox, supra, the court said that, while it was not necessary to decide whether the agreement of affirmance destroyed the liability of the securities, it was strongly inclined to think that the agreement had no such effect."

The judgment of the trial court is affirmed.

All the Justices concur.