(No. 13397.—Decree affirmed.)

MARY J. CAMPBELL *et al.* Plaintiffs in Error, *vs.* LAURA B. FREEMAN *et al.* Defendants in Error.

*Opinion filed February 15, 1921—Rehearing denied April 6, 1921.*

1. DEEDS—*when deed will not be set aside for mental incapacity.* Old age, eccentricity, or even partial impairment of mental faculties, is not necessarily sufficient to set aside a deed, and if a grantor has sufficient mental capacity to comprehend the nature of the transaction in making the deed and its meaning and effect, and is able to protect his own interests, the deed will not be set aside.

2. SAME—*what undue influence will justify setting aside a deed.* Undue influence which will justify the setting aside of a deed must have been of such a nature as to deprive the grantor of his free agency and make his act more the will of another than his own.

3. SAME—*mere advice or argument does not constitute undue influence.* Honest advice, argument or persuasion, if the grantor's mind acts freely thereunder, does not constitute undue influence though it may lead to the making of a deed which would not otherwise have been made.

4. SAME—*what does not show undue influence by grantee.* The fact that a grantor who had no one dependent upon him deeded his property to his niece because he was grateful for her care and attention during his illness, does not, of itself, show undue influence.

5. SAME—*what does not establish fiduciary relation.* The facts that the grantee in the deeds sought to be set aside was the grantor's niece, who was keeping house for him and caring for him during his illness, and that he had bought a home for her, do not establish a fiduciary relation between them such as puts the burden upon her to show the fairness of the transaction.

6. APPEALS AND ERRORS—*when finding of chancellor will not be set aside.* The finding of the chancellor approving the verdict of the jury in a suit to set aside deeds will not be set aside unless it is manifestly against the clear weight of the evidence.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding.

WHITLEY & FITZGERALD, and LEFORGEE, BLACK & SAMUELS, for plaintiffs in error.

REDMON, HOGAN & REDMON, for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Mary J. Campbell and Malinda E. Hunsley, sisters of Francis M. Hostetler, deceased, filed their bill in the circuit court of Macon county against Laura B. Freeman and others, praying that certain deeds of Hostetler to Mrs. Freeman be set aside. The cause came on for hearing before the chancellor and a jury. Issues of fact were submitted concerning the soundness of mind of the grantor and undue influence on the part of Mrs. Freeman at the time of the making of the deeds in question. The bill also charged the existence of a fiduciary relation between the grantor and Mrs. Freeman. The jury returned a verdict on the issues of fact, finding that the grantor was of sound mind at the time of the making of the deeds in question and that the deeds were not obtained by undue influence on the part of Mrs. Freeman. The chancellor entered a decree sustaining the deeds and dismissing the bill for want of equity, and the plaintiffs in error bring the cause here for review.

Francis M. Hostetler died in St. Petersburg, Florida, on the 29th day of September, 1918, at the age of eighty-five years. The defendant Laura B. Freeman, who is a niece of his first wife, kept house for him and took care of him during his last illness, which covered a number of months. It appears from the evidence that the grantor had frequently spent his winters in Florida; that he had no children of his own; that his only relatives were two sisters, the plaintiffs in error here, and certain nieces and nephews of his first wife. His first wife died in 1907, and about two years thereafter he re-married but was later divorced from his second wife. In August, 1917, he received an injury from a fall, which confined him to his bed for several weeks. A short time after receiving this fall Mrs. Freeman came to visit him, and from that time until his decease remained as his nurse and housekeeper. The deeds in question were made in St. Petersburg on the 29th day of January, 1918, and on the 12th day of February of that year. The former conveyed certain farm lands, consisting of about 400 acres, in Macon county. The latter deed conveyed certain town lots located in the village of Harristown, in said county.

While numerous assignments of error were made, the only ones argued here are the questions of mental capacity of the grantor in making the deeds in question, undue influence, and whether or not there was a fiduciary relationship existing between the grantor and Laura B. Freeman, and it is urged that the verdict of the jury and the finding of the chancellor on these issues were contrary to the manifest weight of the evidence.

Plaintiffs in error offered the testimony of five witnesses residing in or near Harristown, Illinois, who had been acquainted with the grantor for a number of years, and the depositions or testimony of eight witnesses residing in St. Petersburg. The testimony of most of these witnesses is to the effect that they considered Hostetler incapable of making a deed. Defendants in error introduced

the testimony of sixteen witnesses residing in or near Harristown for the purpose of showing the mental capacity of the grantor. Nearly all of these witnesses had known the grantor for a number of years, and all testified that in their opinion he was a man of sound mind and capable of making these deeds.

It is well settled that in a case of this character the burden rests upon the complainant to show that the grantor was not mentally capable of making the deeds sought to be set aside. It is also the law that old age, eccentricity, or even partial impairment of mental faculties, is not necessarily sufficient to set aside a deed. The rule is, that if a grantor has sufficient mental capacity to comprehend the nature of the transaction in making the deed and its meaning and effect, and is able to protect his own interests, the deed will not be set aside. (*Bordner* v. *Kelso,* 293 Ill. 175; *Crosby* v. *Dorward,* 248 id. 471; *McLaughlin* v. *McLaughlin,* 241 id. 366; *Baker* v. *Baker,* 239 id. 82; *Sears* v. *Vaughan,* 230 id. 572.) The jury and the chancellor have found that the grantor in this case was mentally capable of making these deeds. Upon reading the evidence in the record we are of the opinion that they were justified in this finding. Hostetler was a man who had accumulated considerable property. The testimony of all the witnesses shows that he transacted all of his business himself, renting his farm, tending to his own banking and purchasing property, and that this continued till the time of his death. The witnesses for defendants in error had known him for many years, while seven of the witnesses offered by plaintiffs in error had known him but a short time. We are of the opinion that on the issue of mental capacity plaintiffs in error have not maintained the burden cast upon them by the law. The same may be said of the issue of undue influence. The rule is, that undue influence which will justify the setting aside of a deed must have been of such a nature as to deprive the grantor of his free agency and to

render his act more the will of another than his own. Mere advice, argument or persuasion, if the grantor's mind acts freely thereunder, does not constitute undue influence, though it may lead to the making of a deed which would not otherwise have been made. If the argument is honest and untainted with fraud the deed cannot be avoided on the ground of undue influence when so procured. *Biggerstaff* v. *Biggerstaff,* 180 Ill. 407; *Bishop* v. *Hilliard,* 227 id. 382; *Sargent* v. *Roberts,* 265 id. 210.

The evidence in this record tends to establish that subsequent to the injury of the grantor in August, 1917, and before he left for Florida in November of that year, he stated that he expected to give his property to Laura B. Freeman for the care she had given him and for further caring for him during the rest of his lifetime. While there is evidence in the record tending to show that she urged him to deed the property to her, yet even the evidence of plaintiffs in error tends to establish that in all the transactions in connection with the deeding of the property, the buying of a house in St. Petersburg which he deeded to Mrs. Freeman, as in all his business affairs, he attended to and transacted all of the business himself. The evidence also shows that he said he had given his own relatives all that he expected to give them; that Mrs. Freeman, a niece of his first wife, took excellent care of him and he proposed to give his property to her. It is but natural that he, having no one dependent upon him, should feel grateful for that care and reward the one giving it. That does not constitute undue influence. We cannot say, after reading this record, that the finding of the jury and the chancellor on the question of undue influence was contrary to the weight of the evidence.

On the issue of fiduciary relation the record contains even less evidence. While it is shown from certain letters which Mrs. Freeman wrote to Hostetler before she came to live with him that she was asking to come to visit him, and

that she took charge of the household when she came into his home and provided his every want, taking care of him in his last illness as though he had been a child, there is nothing in the evidence tending to establish that she dominated him or that he trusted or depended upon her in any way other than for his physical needs. A fiduciary relation exists where confidence is reposed on one side and resulting superiority and influence on the other. In all cases where such influence has been acquired and abused, where confidence has been reposed and betrayed, relief will be granted. The question is, Does a fiduciary relation exist between the parties? Fiduciary relations need not be legal; they may be moral. If such relations exist, the burden is upon one in whom such confidence has been reposed to show that any contract entered into by the parties to such a relationship is not against equity and good conscience. (*Bordner* v. *Kelso, supra;* 2 Pomeroy's Eq. Jur.—3d ed.— sec. 956; *Mayrand* v. *Mayrand,* 194 Ill. 45; *Beach* v. *Wilton,* 244 id. 413.) There is nothing in the record to show that Hostetler ever consulted or advised with Mrs. Freeman on business transactions conducted by him, aside from the purchase of the house in St. Petersburg, when he told her that he was buying a home for her and that if she was satisfied it was satisfactory to him. This does not establish a fiduciary relationship.

Without discussing in detail the testimony of the various witnesses in this case, it is sufficient to say that we are satisfied that the chancellor did not err in entering a decree sustaining the deeds in question. Both the chancellor and the jury heard and saw the witnesses, and both agreed in their finding that the bill of plaintiffs in error, on the issues raised, was not sustained. It is well settled in this State that where a cause is heard by a chancellor and by a jury, their finding will not be reversed unless it is manifestly against the clear weight of the evidence.

The decree of the circuit court will be affirmed.

*Decree affirmed.*