### In re Estate of Frank A. Stahl, Deceased.
### Marie Burk, Appellant, v. Estate of Frank A. Stahl, Deceased, Appellee.

### Gen. No. 40,463.

518

Heard in the second division of this court for the first district at the October term, 1938. Opinion filed May 28, 1940.

PAUL R. WICK, of Chicago, for appellant; WILLIAM T. PRIDMORE, of Chicago, of counsel.

JOHN F. HAAS, FRANK S. RIGHEIMER, JR. and ALBERT N. CHARLES, all of Chicago, for appellee.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

Marie Burk filed a petition in the probate court on October 14, 1937, claiming that she was the owner of an undivided one-half interest in certain securities by reason of a gift *causa mortis* of same to her by Dr. Frank A. Stahl, deceased. Her petition was contested and an order was entered which found that the securities claimed were assets of the estate of Frank A. Stahl. On her appeal from said order to the circuit court that court, after a hearing, directed the jury to find the issues in favor of the estate of Frank A. Stahl, deceased. Pursuant to the verdict of the jury judgment was entered ordering and decreeing that the securities in question "were the property of and belonged to the said Frank A. Stahl at the time of his decease and that said securities now belong to and are assets of the estate of Frank A. Stahl, deceased"; and that "Marie Burk has no right in or title to the securities claimed by her." Petitioner, Marie Burk, prosecutes her appeal from this judgment order.

Dr. Frank A. Stahl died testate on June 10, 1936. His will, in which Gustave A. Stahl, William D. Petzel and Marie Burk, the petitioner herein, were named executors, was admitted to probate and letters testamentary issued June 26, 1936. March 10, 1937, William D. Petzel, one of the executors, filed a petition in the probate court of Cook county, wherein he alleged that Marie Burk was in possession of certain securities which belonged to the estate of Frank A. Stahl; that she claimed said securities as her property; and asked the court to determine the ownership of such securities.

On April 14, 1937, the following order was entered in the probate court:

"This matter coming on to be heard, April 14, 1937, on the Petition of William D. Petzel, one of the co-executors of the Last Will and Testament of Frank A. Stahl, deceased, and testimony having been adduced, it is hereby

"Ordered, Adjudged and Decreed that the co-executor, Marie Burk, respondent herein, deliver over instanter to the co-executors, William D. Petzel and Gustav A. Stahl, the following securities now in her possession, to-wit: (Securities listed.)

"And that the same be inventoried as assets of the Estate of Frank A. Stahl, deceased."

The securities listed in the order were all the securities claimed by Marie Burk in the petition thereafter filed by her on October 14, 1937. June 24, 1937, an order was entered by the probate court which found that Marie Burk had refused to turn over the securities pursuant to its order of April 14, 1937, and directed her to show cause why she should not be held in contempt of court for failure to comply with said order of April 14, 1937. On July 1, 1937, an order was entered by the probate court which, after finding that Marie Burk appeared in court to show cause pursuant to the order of June 24, 1937, and that in open court she turned over to her coexecutors the securities designated in the order of April 14, 1937, directed that the rule to show cause be discharged.

On October 14, 1937, Marie Burk filed the petition in the probate court heretofore referred to, in which she alleged substantially that Frank A. Stahl, deceased, had in his lifetime given to her an undivided one-half interest in certain securities and that he gave the other undivided one-half interest in said securities to Gustave A. Stahl; that she had appeared before an assistant judge of the probate court on April 14, 1937, pursuant

to notice, for a hearing on a petition and motion of William D. Petzel, one of the executors of the estate of Frank A. Stahl, for an order on her to turn over the aforesaid securities to the other executors of said estate; that on that occasion she was advised by said assistant judge of the nature of the proceeding; that when such assistant judge learned that she was without an attorney, he stated in open court that he would not hear the matter until she was represented by counsel and would enter no order in connection therewith; that thereafter petitioner left the courtroom and did not know of the entry of any order, but that the records in the cause disclose that on the aforementioned date said assistant judge did enter an order directing that petitioner turn over to her coexecutors, William D. Petzel and Gustave A. Stahl, the aforesaid securities; that said order recites that testimony had been heard, whereas, as a matter of fact, no testimony was given, no hearing was had while petitioner was in court and she left the courtroom with the assurance of the presiding judge that no order would be entered; that there had been no subsequent or prior adjudication of her ownership of or interest in said securities; that no hearing or trial has ever been held to determine petitioner's ownership of or interest in said securities; that same were delivered to William D. Petzel and Gustave A. Stahl, as coexecutors, to prevent her from being held in contempt of court for violation of the order of April 14, 1937; that by virtue of the gift hereinabove set forth she is the owner of an undivided one-half interest and Gustave A. Stahl is the owner of the other one-half undivided interest in all the securities mentioned herein and the estate has no title to or interest in said securities; and that any question of petitioner's right to or interest in said securities should be adjudicated only after a full and complete hearing before the court. She concluded her petition with the prayer that the order of

April 14, 1937, be vacated and that a final adjudication of her ownership of said securities be made by the court after a full and complete hearing.

The various legatees and devisees under the will of Frank A. Stahl and the executors William D. Petzel and Gustave A. Stahl, who was a brother of the deceased and one of his legatees, filed motions to dismiss the petition of Marie Burk on the grounds (1) that the order of April 14, 1937, was *res adjudicata* of the ownership of said securities and (2) that the claim of Marie Burk was barred by the statute of limitations. These motions to dismiss were overruled.

Then certain of the legatees under the will of Frank A. Stahl filed an answer to the petition, which, after denying that the decedent made a gift to petitioner of any interest in said securities or that he gave Gustave A. Stahl any interest in same, admitted that Marie Burk appeared before an assistant judge of the probate court on April 14, 1937, for a hearing on the petition and motion of William D. Petzel, one of the executors, for an order on her to turn over said securities to the other executors of the estate of Frank A. Stahl, deceased, and that she was advised by the assistant judge of the nature of the pending proceeding. Then the answer, after denying that the assistant judge stated in open court that he would not hear the matter when he learned petitioner was without counsel and that said assistant judge stated he would enter no order in connection therewith, alleged that the order of April 14, 1937, was duly entered. The answer admitted that petitioner turned over said securities to her coexecutors to avoid being held in contempt of court for violation of the order of April 14, 1937. The answer then, after denying that petitioner was entitled to a hearing on her petition, alleged that the order of the probate court of April 14, 1937, was entered after a hearing; that said order was final and appealable; that the probate court had lost jurisdiction to inquire further into the ownership of

said securities and that any further assertion of claim by petitioner was barred by the statute of limitations. The answer concluded with a denial that the petitioner was entitled to any of the relief prayed for.

On the issue raised by the foregoing petition and answer as to the ownership of the securities involved, evidence was presented and after a full hearing the probate court entered an order on April 8, 1938, finding that all of the securities claimed by Marie Burk were assets of the estate of Frank A. Stahl, deceased. It was this order, as heretofore shown, from which petitioner appealed to the circuit court.

In the circuit court various legatees, devisees and the executors Petzel and Stahl moved to dismiss the appeal and the cause of action on the same grounds urged in the probate court. The motion to dismiss the appeal was overruled.

In support of her claim that she was the owner of the securities in question by virtue of a gift made to her of same on June 10, 1936, by Frank A. Stahl a few hours before he died, Marie Burk presented several witnesses in the circuit court who testified to the effect that the decedent had stated on several occasions that it was his intention and desire to give petitioner and his brother, Gustave A. Stahl, certain securities; that he had placed such securities in a valise or satchel and had called for such valise before he died and took therefrom a bundle or package containing securities consisting of stocks and bonds; and that he placed same in petitioner's hands. Petitioner claims that the securities which she had theretofore been compelled to turn over to her coexecutors by order of the probate court were the same stocks and bonds that were in the package which the decedent had placed in her hands shortly before he died. No witness even attempted to identify specifically a single security which it was claimed the deceased had expressed an intention of giving to petitioner or which was contained in the package which, ac-

cording to some of her witnesses, had been placed in petitioner's hands by the deceased. In order to prove the identity of the securities in said package Marie Burk became a witness in her own behalf and testified that after the death of Frank A. Stahl she saw a brown valise in the clothes closet of his room and that it remained there without being touched by anybody for two days after Stahl's death. Her counsel then made the following offer of proof: "That was on Friday, two days after his death, that she went into the closet in his room, the closet in the room of Dr. Stahl and took from that closet a brown valise, and took that valise into her living room and opened the valise, and took from it a package of securities approximately eight inches long, three or three and a half inches wide, and about two and a half to four inches thick. This package was bound with a rubber band, and that she opened the package and examined the various securities therein found, and made a list of those securities, and that she will further testify and identify and describe each one of those securities, and that the identity and description of those securities will be the same as the securities listed in the petition as being had." An objection to this offer of proof was sustained.

Petitioner first contends that "The judgment order of the Circuit Court of Cook County in the case at bar, was entered on a jury verdict rendered at the direction of the Court, in favor of the 'Estate of Frank A. Stahl, Deceased,' which is not a natural or artificial person; was never a party to the cause of action, and, as it lacks legal entity to sue or be sued, a verdict or judgment in favor of it is a nullity."

In our opinion this contention is purely an afterthought and entirely lacking in merit. Petitioner did not object to the form of the verdict in her written motion for a new trial. By filing such motion in writing she thereby waived all grounds not specified therein. (*Ulbricht v. Western Coach Lines*, 289 Ill. App. 164;

*Erikson v. Ward,* 266 Ill. 259.) An alleged error not urged in the trial court cannot be urged for the first time in a court of review. Moreover the petition of Marie Burk recognized that the only issue involved herein was whether she or the estate of Frank A. Stahl, deceased, was entitled to the securities in question and the verdict of the jury clearly decided that issue. The appeal bond filed by petitioner in the circuit court recites that the sureties thereon ''are held and firmly bound unto the estate of Frank A. Stahl, deceased.'' All proceedings in this cause in which petitioner has participated in both the probate and circuit courts have been entitled ''in the Matter of the Estate of Frank A. Stahl, deceased.'' Her own petition is so entitled. The petitioner is therefore estopped by her conduct throughout this litigation from objecting to the form of the verdict and judgment order.

But petitioner insists that, under the familiar rule that a judgment rendered by a court having no jurisdiction to hear and determine the case is an absolute nullity and may be attacked at any time and in any proceeding, the verdict rendered herein finding the issues in favor of the ''Estate of Frank A. Stahl, deceased,'' and the judgment entered thereon are void because said estate, not being a legal entity could not properly be a party to the proceeding and therefore the court had no jurisdiction to enter the judgment appealed from upon a verdict in favor of a legally non-existent party. The position of Marie Burk in this regard is untenable. This is not an original action at law but a matter which has to do with the probate of an estate and all the proceedings herein were had in accordance with the provisions of the act for the administration of estates (Ill. Rev. Stat. 1937, ch. 3 [Jones Ill. Stats. Ann. 110,001 *et seq.*]). All the parties in interest submitted themselves to the jurisdiction of the circuit court and that court certainly had jurisdiction of the subject matter by reason of petitioner's appeal to it

from the order of the probate court. In her petition Marie Burk claimed that "the estate has no title or interest in said securities." By this averment she defined the issue in the cause and the verdict of the jury simply held against her on that issue. It has been uniformly and repeatedly held that a proceeding such as this is not governed by any of the technical rules applicable to formal suits at law. In *Grier v. Cable,* 159 Ill. 29, the court said at pp. 35, 36:

"We are of the opinion that the proceedings provided by law in this State for the presentation and allowance of claims against the estates of decedents are in no proper sense suits or proceedings at law or in chancery, but purely statutory proceedings, provided for the prompt and summary presentation, allowance and classification of all just claims against such estates. . . .

"In all of its essential features this proceeding is distinctively statutory. The mere fact that when a claim is contested, so as to necessitate a trial, the trial is to be conducted in the same way in which suits at law are tried, can not, of itself, have the effect of converting a purely statutory proceeding into a suit or proceeding at law. In all other respects the proceeding is *sui generis,* and bears no analogy to proceedings conducted according to the forms of the common law. No written pleadings are required. (*Thorp v. Goewey,* 85 Ill. 611; *Wolf v. Beaird,* 123 id. 585.) The proceeding is not governed by the technical rules which apply to suits at law. (*Scheel v. Eidman,* 68 Ill. 193.)"

Petitioner next contends that "under the first exception to section 2 of the Evidence act she was competent to testify to facts occurring after the death of Frank A. Stahl." Section 2 of the Evidence Act (Ill. Rev. Stat. 1937, ch. 51, par. 2 [Jones Ill. Stats. Ann. 107.068]) in so far as it is pertinent here provides that "No party to any civil action . . . shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or

defends ... as the executor, administrator, heir, legatee or devisee of any deceased person ... except in the following cases. ..." The first exception to the foregoing provision is that "In any such action ... a party ... may testify to facts occurring after the death of such deceased person. ..."

As heretofore stated the witnesses produced by Marie Burk completely failed to identify any documents in the possession of Stahl prior to his death which might have been the subject matter of a gift from him to her. No witness testified that the securities claimed by Marie Burk were among the contents of the decedent's valise prior to his death. Consequently there is no way of determining from the testimony presented whether or not Stahl had any securities in his valise on the day he died or at any other time. Moreover, if it could be inferred from the evidence in the record that there were securities in Stahl's valise on the day he died, it still could not be determined from the evidence what specific securities were in that valise. The final link in the chain of evidence which was necessary to connect the securities claimed by Marie Burk in her petition filed more than a year after Stahl's death to the unknown contents of his valise was missing. Only by Marie Burk's own testimony could this link be supplied. She could not testify directly that the securities claimed by her were in Stahl's valise on the day he died and prior to the time of his death. However, by offering to testify that the valise in question was continuously in her possession from the time of his death, she proposed to accomplish the same result. The admission of her evidence in this regard would by indirection bring into the record testimony as to what had occurred before Stahl's death—the very thing that sec. 2 of the Evidence Act [Ill. Rev. Stat. 1937, ch. 51, § 2; Jones Ill. Stats. Ann. 107.068] seeks to prevent. The purpose of her proffered testimony was unquestionably to identify the contents of Stahl's valise prior to his death as the very securities

which she claimed in her petition filed over one year later and the court properly excluded such testimony as coming within the statutory prohibition against testimony by an adverse party concerning events which happened prior to Stahl's death. In *Halladay v. Estate of Blair*, 223 Ill. App. 609, the court had occasion to pass upon the competency of testimony similar to that proffered by Marie Burk under a practically identical factual situation. There the claimant sought to recover from the estate of her mother $2,685 on 19 promissory notes which she alleged had been executed by her mother and delivered to her prior to her mother's death. The claim was allowed in the probate court and in a trial by jury in the circuit court a verdict was rendered in favor of the claimant, upon which judgment was rendered. In the trial of the cause in order to prove the delivery of the notes the claimant was permitted to testify over the objection of the executor of her mother's estate that she had possession of the notes at all times from her mother's death until she delivered them to her attorney for the purpose of filing a claim against said estate. Admission of this testimony was assigned as error in the Appellate Court. In holding that claimant's testimony should have been excluded, the court said at pp. 611, 612:

"It is contended that she was a competent witness to give such testimony under the first exception of section 2, ch. 51, of Hurd's Revised Statutes (Cahill's Ill. St. ch. 51, ¶ 2) because such testimony had reference to a transaction occurring after the death of her mother. It is further contended by the claimant that if such testimony was competent and admissible, then it furnished proof of her possession of the notes immediately upon the death of her mother, and that this possession raises the presumption or at least leads to the necessary inference that the notes were delivered to her by her mother. The provision of the law which renders a claimant incompetent to testify concerning transactions

which occurred during the lifetime of the decedent is founded upon sound considerations of public policy. The statute in this regard was intended to protect estates of deceased persons from assaults which would tend to reduce or imperil the estate. If it were not so, the greatest injustice would be the result. A willing living witness would have the whole case in his own power; and a door to perjury would be opened so wide and so inviting as to require great moral firmness to decline an entrance into it. It would be a temptation very many would not be able to resist. *Boynton v. Phelps,* 52 Ill. 210.

"The obvious purpose of eliciting the testimony from the claimant that she had been in possession of the notes in question from the time of the death of the mother until she had delivered them to her attorneys was to furnish proof that the claimant had possession of the notes prior to the death of her mother. If claimant's counsel had asked her upon the trial whether or not she had possession of the notes prior to the death of her mother, such question would have been objectionable because of the incompetency of the witness. If she could not have been permitted to answer the question, upon what ground may she be permitted to answer a question framed in different language but which is tantamount to it? What cannot be allowed by direct question cannot be allowed through a skillfully framed indirect interrogatory. *Telford v. Howell,* 220 Ill. 52. Without this testimony of claimant there is nothing in the record tending to prove a delivery of the notes. Therefore the appellant's motion for a directed verdict should have been allowed."

As heretofore stated the testimony of Marie Burk in the instant case was properly excluded and in the absence of any testimony as to the identity of the securities, which it is claimed were given to her by decedent, the trial court was bound to direct a verdict against the petitioner.

The petitioner's final contention that "the trial court erred in not submitting the case to the jury" is without merit as has already been shown. No attempt has been made by petitioner in her brief to either discuss or analyze the evidence bearing upon the purported gift of the securities to her by the decedent. It may well be that her counsel purposely refrained from discussing same because of its apparent absurdity. Dr. Stahl was not related to Marie Burk but he had lived at her home for several years prior to his death. A few months theretofore he had made a will in which he left all of his property to the members of his family and made no provision therein for Marie Burk. He was past 70 years old, but in possession of all of his faculties until he had a cerebral hemorrhage on the day of his death, which caused the complete paralysis of his right side and of his throat. Thereafter he was unable to speak. It was while he was in that condition that a child's alphabet book was produced in his bedroom, although there was no showing that he had in any manner indicated that he wanted same. He was then held in a sitting position with a pencil in his hand by Marie Burk's brother. The alphabet book had only one letter of the alphabet on each page and it was found that it was too difficult for Stahl to point out the letters of the alphabet in order to spell out the words that the witnesses testified he wanted to indicate and turn the pages of the book at the same time. Marie Burk then had her brother print the letters of the alphabet two inches high on a piece of wrapping paper. Stahl, according to petitioner's witnesses, then proceeded to point out the letters that spelled v-a-l-i-s-e and c-l-o-s-e-t. Marie Burk, interpreting the words purportedly indicated by Stahl to mean that he wanted her to bring to him his valise from the closet, then opened the locked closet door with a key and brought forth a valise, which she opened and placed across Stahl's knees. Then, according to the same witnesses, he reached into the valise with his left

hand and took out the package said to contain the securities and placed them in petitioner's hands. Strange to say, instead of keeping the package, Marie Burk put the package back in the valise and put the valise back in the closet. It is on this character of evidence that petitioner sought to prove the delivery of the gift *causa mortis*. The law requires that such a gift shall be established by clear proof and that no uncertainty shall exist as to the subject or object of the gift. (*Barnum v. Reed,* 136 Ill. 388; *Rothwell v. Taylor,* 303 Ill. 226; *Kramer v. Habel,* 240 Ill. App. 40.) "Gifts *causa mortis* being donations not made in conformity to the Statute of Wills but made without the safeguards cast around the execution of wills, are not favored in law." *Gilmore v. Lee,* 237 Ill. 402.

We are also impelled to hold that, since the order of the probate court of April 14, 1937, was a final determination of the ownership of the securities involved and no appeal was taken therefrom, such order was *res adjudicata* of the claim made by Marie Burk in her petition of October 14, 1937, and the cause should have been dismissed by the circuit court on that ground.

Since the claim set forth in Marie Burk's petition of October 14, 1937, was filed more than one year after letters testamentary had issued June 26, 1936, it was barred by the statute of limitations applicable to claims filed in the probate court (Ill. Rev. Stat. 1937, ch. 3, par. 71, sec. 70 [Jones Ill. Stats. Ann. 110.071]).

For the reasons stated herein the judgment of the circuit court is affirmed.

*Judgment affirmed.*

FRIEND and SCANLAN, JJ., concur.