The First National Bank of Elgin, a National Banking Association, Conservator of the Estate of Rose D. Thies, Incompetent, Plaintiff-Appellee, v. Donald C. Dierking, Defendant-Appellant.

Gen. No. 66–151.

Second District.

October 4, 1967.

Irving Goodman, of Chicago, for appellant.

McCarthy, McCarthy and Meyers, of Elgin, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

The First National Bank of Elgin brought this suit as Conservator of the Estate of Rose D. Thies, Incompetent, herein referred to as Rose, against the defendant, Donald C. Dierking, seeking to set aside two deeds, each of which named the defendant and Rose as joint tenants. The trial court held that the title conveyed by the two deeds was, in fact, held by the defendant in a resulting trust solely for the use and benefit of Rose, and directed the defendant to convey all of his title and interest in the premises to her. The defendant has prosecuted this appeal.

There was substantially no factual dispute from the evidence elicited at the trial. The defendant first met Rose in 1952. He was then in his forties, and she in her sixties. He had known her brother, with whom she lived, for about thirty years. Her brother died in 1955,

and thereafter the defendant and his sister or some other person, took Rose out every Friday, Saturday and Sunday, for dinners and other outings. The defendant testified that not a weekend outing was missed from 1955 to 1964. Annually, they went to California on a vacation.

The defendant and others testified relative to the constant companionship of the defendant and Rose during this period of time. He helped care for and maintain the two properties in question: the one Rose lived in and the one she rented. The defendant collected the rentals for Rose and turned all of the money over to her. He was never paid for the services he performed.

Rose's closest living relatives were certain nieces and nephews, whom she saw on occasion, but she was not intimate with them. It is clear that from 1955 on, the defendant and his sister afforded Rose the only real social life and activity enjoyed by her. The relationship between the defendant and Rose was platonic. On all occasions when they were out together, others accompanied them.

In November of 1959, Rose purchased certain rental property located on Wing Street for the sum of $14,000. The defendant had told her that this property was for sale and had showed it to her. She placed the title to this property in joint tenancy with the defendant. The effect of the joint tenancy was known to her. The lawyer for the seller prepared the deed. The defendant testified that Rose told him that she wanted this to be his house—apparently, after her death.

In December of 1960, Rose caused the property which had been in her family for many years and where she resided, to be deeded to herself and the defendant as joint tenants. A different lawyer prepared this deed. Again, it appears that she was advised of and was fully aware of the legal effect of joint tenancy.

It is conceded that at the time of both of these transactions, Rose was competent. There is absolutely no

evidence of fraud, duress or undue influence. The defendant's testimony, that he did not know of the second joint tenancy deed until after he was appointed conservator, is uncontested. Witnesses, other than the defendant, testified to Rose's assertions that she wanted the defendant to have her property after her death; that she did not want to leave anything to her nephews and nieces; and that the defendant was the only one who did anything for her. The defendant also testified to an occurrence in 1958, at which Rose, who apparently had asked her family lawyer of many years standing to prepare a will for her leaving only a nominal amount to her relatives and naming the defendant as executor, announced her displeasure upon finding that the lawyer had prepared the will in such a manner that the relatives were left substantial amounts.

Reduced to the relevant essentials, we have before us a situation where Rose, who at all times was fully aware and cognizant of the legal effect of joint tenancies, knowingly purchased a piece of property and placed the title thereto in joint tenancy with the defendant; then subsequently caused the title to her own residence to be placed in joint tenancy with him. No fiduciary or confidential relationship, fraud, duress or overreaching was shown to have existed between the two parties; the defendant was unrelated, but a devoted friend and companion of his benefactor, Rose, and perhaps her sole friend of this type. The benefactor had no close relatives and none of her nieces and nephews were dependent upon her. She had expressed a desire that her relatives not receive her property upon her death, and also that the above named joint tenant, the defendant, be the recipient of her estate.

■■ The trial court found that the defendant held title under said deeds in a resulting trust for and on behalf of Rose; and that there was no evidence to sustain a constructive trust. A constructive trust, generally,

must be based upon either actual fraud, or upon a confidential or fiduciary relationship and a subsequent abuse of the confidence reposed sufficient to warrant the imposition of a trust. Cunningham v. Cunningham, 20 Ill 2d 500, 504, 170 NE2d 547 (1960); 35 ILP Trusts, § 61. A constructive trust is a creation of the chancery court arising by operation of law and designed to prevent an unjust enrichment. No confidential or fiduciary relationship was alleged or shown; nor was actual fraud asserted or proven.

██ It appeared from the evidence that the defendant learned that the Wing Street property was for sale and apprised Rose of this fact. The evidence further indicated that Rose did not entrust the handling of her business and financial affairs to the defendant, except to the extent that she permitted him to collect the rentals. Her mental condition at the time of the transactions was good and she took it upon herself to be advised and possessed of sufficient knowledge to understand the complete nature of her transactions. The friendliness of the defendant and the advice and assistance he rendered to Rose could not be found to have deprived her of free agency and to have constituted undue influence. Gregory v. Gregory, 323 Ill 380, 386, 154 NE 149 (1926); Campbell v. Freeman, 296 Ill 536, 540, 130 NE 319 (1921); Udstuen v. Illk, 291 Ill 443, 448, 126 NE 148 (1920).

██ If any form of a trust existed, it had to be a resulting trust, as found by the trial court. Such trust also is a creation of the law, and it arises out of the presumed intent of the parties, distilled from their conduct. It comes into being the instant the title vests, or not at all. Its purpose is to accomplish the supposed intent of the parties at the time of the transaction. First Nat. Bank & Trust Co. of Rockford v. Illinois Nat. Bank & Trust Co. of Rockford, 19 Ill2d 385, 388, 167 NE2d

10

223 (1960); West v. Scott, 6 Ill2d 167, 172, 128 NE2d 734 (1955); Paluszek v. Wohlrab, 1 Ill2d 363, 366, 115 NE2d 764 (1953); 35 ILP, Trusts, § 41. The party seeking to establish such a trust must do so by evidence that is clear, convincing, unequivocal and unmistakable. If such evidence is doubtful or capable of a reasonable explanation upon any theory other than the existence of such a trust, it is insufficient. Fender v. Yagemann, 29 Ill2d 205, 208, 193 NE2d 794 (1963); West v. Scott, supra; Paluszek v. Wohlrab, supra.

 Where the purchase price for property is paid for by one party and title placed in another, either solely or as a joint tenant, under Illinois law a prima facie presumption is raised in favor of a resulting trust. The presumption is that the parties intended that the latter hold title for the benefit of the former and it may be rebutted. The facts and circumstances of each case will determine when such rebuttal has been effected. The facts and circumstances which may rebut such a presumption are those which go to illustrate a contrary intent of the parties at the time of the transaction. Bowman v. Pettersen, 410 Ill 519, 524, 102 NE2d 787 (1952).

 The presumption favoring the resulting trust would be applicable to the Wing Street property which was purchased by Rose, and the title to which was placed in joint tenancy at the time of purchase. This presumption would not arise relative to the other property—that held by Rose's family for many years—which she transferred into joint tenancy with the defendant. The presumption favoring a resulting trust does not arise from a gratuitous conveyance. Byron v. Byron, 391 Ill 256, 259, 62 NE2d 790 (1945); Gregory v. Gregory, supra, 388; Mees v. Steffey, 310 Ill 161, 169, 141 NE 419 (1923); Mayfield v. Forsyth, 164 Ill 32, 36, 45 NE 403 (1896); Moore v. Horsley, 156 Ill 36,

11

43, 40 NE 323 (1895); 4, Scott on Trusts, 2nd Ed, § 405. Many modern decisions hold that where the owner of property transfers it without declaring any trust, the transferee does not hold the property upon a resulting trust even though the transfer is gratuitous. See: Restatement of the Law (Second) Trusts 2nd, § 405 and Appendix; Bogert Trusts & Trustees (Second Edition), § 453. The ratio decidendi is that the reasonable implication under such circumstances would be that the grantor intended to give her property away; and that the leaving of such reservation of interest, be it life estate or otherwise, to implication is not in accord with modern concepts.

The outcome, in the case at bar, must be the same as to both properties. The presumption created by the payment of the purchase price is not sufficiently strong to withstand the uncontroverted evidence which clearly disclosed: that Rose intended that her nieces and nephews should not receive these properties upon her death; that she understood that the joint tenancies with the defendant would preclude this result; that she wanted the defendant—the one person who had shown her continued kindness, attention and assistance in her later years—to receive these properties; and that she told others of these wishes. Her then intent was further evidenced by the changes which she sought to have made in her will, which changes were consistent with her wishes as of the time of the execution of the joint tenancy deeds.

██ It was the intent of Rose at the time of the execution of the deeds that was crucial! All of the evidence was consistent with her then intent to make a gift of these properties to the defendant. There is no law which dictates that Rose could not dispose of her property so that her nieces and nephews would not receive it upon her death. There is nothing sinister in one per-

son befriending another and the latter rewarding such friendship by gifts such as are before us here. Rose was not on intimate terms with the members of her family. The relatives were nieces and nephews, whom she seldom saw. Under the facts in this case, the defendant, as a constant and considerate friend, was the object of her bounty and, absent any overreaching or undue influence which plaintiff neither alleged nor established, Rose had every right to convey the title to her property in such manner that the defendant would receive it upon her death.

The fact that both the defendant and Rose recognized a right in Rose during her lifetime to use the property or receive the income therefrom was not inconsistent with Rose's intention that a gift was intended at the time of the execution of the deeds. Rose intended to create a present legal interest in the property in the defendant at the time she executed the deeds—which would afford a means or method of automatically transferring the property to him upon her death. There is no claim that the defendant is now seeking the present income from the properties. The evidence indicates every willingness on his part that she should enjoy the use of the property during her lifetime.

It may be that taxwise he is making a gift to her each year during her lifetime, when he permits her the use and benefit of the property or its income, but this is irrelevant for our purposes and does not justify the setting aside of the deeds in question. The end result was the apparent intent of the parties and they experienced no difficulty in carrying out this intent until the filing of the suit in question.

When the testimony is contradictory in a trial without a jury, the credibility of the witnesses and the weight to be accorded their testimony, is a matter to be determined by the trial court, and its findings will

13

■■■■■■■■■■■■■■■■■■■■

not be disturbed unless manifestly against the weight of the evidence. Mortell v. Beckman, 16 Ill2d 209, 216, 157 NE2d 3 (1959); La Salle Nat. Bank v. County of Cook, 12 Ill2d 40, 48, 145 NE2d 65 (1957). However, in the case at bar, the material facts are not in dispute, and the controversy here involved is the application of the law relating to resulting trusts to such uncontroverted facts. This case presents essentially a question of law. Thus, the rule that we may set aside the factual findings of the trial court only when contrary to the manifest weight of the evidence, has no application. Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 309, 175 NE2d 785 (1961); Crittendon v. State Oil Co.,78 Ill App 2d 112, 119, 222 NE2d 561 (1966).

■■■ The plaintiff herein has failed to prove the existence of a resulting trust by clear, convincing, unequivocal and unmistakable evidence. Its evidence is capable of a very real and reasonable explanation on the theory of a voluntary and gratuitous conveyance. For these reasons, the judgment of the trial court is reversed and this cause remanded with directions to enter judgment for the defendant.

Reversed and remanded with directions.

MORAN and ABRAHAMSON, JJ., concur.