*In re* ESTATE OF GERTRUDE TRAMPENAU, Deceased.— (EVA KENDON, Ex'x of the Estate of Gertrude Trampenau, Petitioner-Appellee, *v.* KLAUS-PETER SZILLIES *et al.*, Respondents.—(KLAUS-PETER SZILLIES, Respondent-Appellant).)

Second District   No. 79-406

Opinion filed September 9, 1980.—Rehearing denied October 23, 1980.

Irving Goodman, of Chicago, for appellant.

Eva R. Pollack, of Downers Grove, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Petitioner, Eva Kendon, as executrix of the estate of Gertrude Trampenau, deceased, brought a citation proceeding (Ill. Rev. Stat. 1977, ch. 110½, par. 16—1) in the circuit court of Du Page County to recover the sum of $39,987.40 alleged to have been .fraudulently converted from decedent's estate by the respondent, Klaus-Peter Szillies. The trial court entered judgment for petitioner, but declined to award interest. Respondent appeals, contending that (1) the trial court erroneously placed the burden of proof upon him; (2) that the judgment is against the manifest weight of the evidence; and (3) that numerous instances of misconduct on the part of petitioner's counsel prejudiced the court against respondent, requiring reversal. Petitioner cross-appeals from that portion of the judgment which refused to allow interest and also seeks costs and attorney fees pursuant to a petition under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41).

The evidence discloses that respondent came to this country from Germany in 1965 at the age of 21. He lived with his uncle and his uncle's wife, Gertrude Trampenau, the deceased, for about one year before going out on his own. He visited his aunt and uncle often, taking them shopping and working around their house. He continued to visit Gertrude two or three times each week after his uncle's death in 1968, and would take her places and do odd jobs for her, always without compensation.

In 1973 Gertrude, who was then about 78, decided to sell her house and move in with her grandnephew, Douglas Kendon, one of petitioner's sons. At Gertrude's request, respondent conducted the negotiations for the sale of her home and represented her at the closing on March 15, 1974. The proceeds of the sale, about $31,000, were deposited in Gertrude's checking account at the Lake View Bank.

Sometime in March 1974 Gertrude, respondent, and his friend, Ellen Hanock (now Ellen Hayes), discussed what she should do with her savings and the money she expected from the sale of her house. Gertrude told them about the ravages of the inflation in Germany during the 1920's and that she wished to invest in gold in order to protect her money from the burgeoning inflation in this country. Respondent informed her that a United States citizen could not own gold, but could own gold stocks and explained them to Gertrude. Ellen Hayes testified that Gertrude seemed to understand everything that was said to her.

Respondent testified that Gertrude requested him to open a joint tenancy account with the brokerage house of Cowen & Company in the names of herself, respondent, and petitioner and, accordingly, on April 2, 1974, respondent directed Cowen & Company to purchase 1219 shares of International Investors, Inc., a gold stock, for $29,940.40. On April 8, 1974, Gertrude came to respondent's apartment and gave him a blank check on which he filled in the date, the amount and the name of the payee, Cowen & Company, and decedent signed it. On April 9, 1974, a second account was opened at Cowen & Company, this time in joint tenancy between only respondent and Gertrude. As with the other purchase, respondent selected the stocks and, at the request of the decedent, directed the brokerage house to purchase additional gold stocks, 100 shares of President Steyn and 100 shares of Vaal Reefs at a cost of $10,000. This stock was paid for by a check which, he testified, had been signed in blank and mailed to him by decedent; respondent filled in the amount and the name of the payee, Cowen & Company.

According to respondent, only Gertrude and he were present when she instructed him to purchase the stocks and to arrange for the joint tenancy accounts. As to the April 2 purchase, respondent testified that Gertrude made a gift to him of his interest in order to compensate him for the interest petitioner had as a joint tenant in a savings account with decedent. Respondent also testified that decedent directed him to have the stock certificates held by the broker and to have all communications with respect to the stock sent to respondent's apartment. No joint tenancy agreement was ever signed by the parties and Gertrude died on April 15, 1974. Her will designated petitioner, Eva Kendon, as executrix and left the bulk of her estate to her; respondent received nothing under the will.

On the afternoon of April 15, 1974, Douglas Kendon called respondent to inform him of Gertrude's death, and he testified that respondent asked him if Gertrude had mailed a check. Respondent denies he said that but asserts that he told Kendon that he had received a check that morning and had mailed it to the broker before he learned of Gertrude's death.

Respondent's testimony was inconsistent with that of Thomas Lipman, the broker who handled the disputed accounts at Cowen & Company. Lipman testified that he phoned respondent on April 17, 1974, to inquire about payment for the stock purchased on April 9, 1974, and that respondent told him he was waiting for a confirmation statement. Respondent did not inform Lipman of Gertrude's death nor did respondent tell him that a check had been mailed on April 15, 1974. Roger K. Figstad, the manager of Cowen & Company, testified that his office did not receive the $10,000 check until April 22 or 23, 1974.

For seven months after Gertrude's death respondent maintained that the stock belonged to her estate. On April 21, 1974, he told Douglas Kendon that he had been handling her business affairs and that he had purchased gold stocks for her which now belonged to the estate. Respondent made similar statements to others at the funeral. During the third week of May 1974, Douglas Kendon inquired of respondent why his name was on the stock and was informed that he had acted as Gertrude's agent and that the presence of his name on the stock was meaningless. In October 1974, respondent told petitioner he was ready to turn over to her all of the stocks. At a hearing of the matter on November 22, 1974, respondent informed the court he had been ready to turn over the stock from the beginning because Gertrude would not have wanted the family linen to be aired in public. Yet, on June 10, 1975, respondent filed pleadings where, for the first time, he claimed an interest in the gold stocks as a surviving joint tenant.

After a bench trial, the trial court found that a fiduciary or confidential relationship existed between decedent and respondent and that respondent had failed to discharge his burden to overcome the presumption of fraud arising from that relationship. Respondent was found liable to the estate for the $39,987.40 he had received from decedent and was ordered to cause the stock certificates to be returned to the estate together with any dividends which had accrued. The court further ordered that "Respondent, Klaus-Peter Szillies, be credited with the value of the accrued stocks and accrued dividends in addition to the value of the original securities on the date of the delivery by said Respondent to said Petitioner of the amount to be determined as set forth in the Judgment entered in the above-entitled cause of action."

## I

Respondent initially contends that the trial court erroneously placed the burden upon him to establish the validity of the purported gift to him of an interest in the stock as a joint tenant.

He does not question the trial court's ruling that he occupied a position of trust and confidence with respect to the deceased. It is well established that once a fiduciary or confidential relation has been shown, the law presumes that any transaction between the parties by which the fiduciary has profited is fraudulent. The burden then devolves upon the dominant party to prove by clear and convincing evidence that the transaction was fair and equitable, and did not result from undue influence. (*Clark v. Clark* (1947), 398 Ill. 592, 76 N.E.2d 446; *Schueler v. Blomstrand* (1946), 394 Ill. 600, 69 N.E.2d 328; *Haslinger v. Gabel* (1931), 344 Ill. 354, 176 N.E. 340.) If the fiduciary does not discharge his burden, the transaction will be set aside (*e.g., Clark v. Clark*). The mere existence of a fiduciary relationship, however, does not render invalid every transaction between the parties. If such dealings are open, fair and honest, they are as valid as transactions between strangers. *Schueler v. Blomstrand; Gregory v. Gregory* (1926), 323 Ill. 380, 154 N.E. 149.

Respondent relies upon *In re Estate of Copp* (1971), 132 Ill. App. 2d 974, 271 N.E.2d 1, and *In re Estate of Foster* (1969), 104 Ill. App. 2d 447, 244 N.E.2d 620, in urging that petitioner had the burden of overcoming the presumption of donative intent which arises from the establishment of a joint tenancy. (*Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 202 N.E.2d 470.) In each of those cases the donor initiated the establishment of a joint tenancy and executed a joint account signature card with the presumed donee. In the present case, however, respondent appears to have initiated and carried out the transaction unilaterally and decedent, the purported donor, executed neither an agreement to establish a joint tenancy with him or signed a common signature card. In these circumstances the trial court did not err when it placed the burden upon respondent to show by clear and convincing evidence that the purported gift was not the product of fraud or overreaching on his part. Respondent's further argument that it is only when an abuse of a confidential relationship is shown that a presumption of fraud arises is without merit. If such an abuse is shown the complainant has no need of a presumption of invalidity; he is then entitled to relief. *Curtis v. Fisher* (1950), 406 Ill. 102, 92 N.E.2d 327.

## II

We next examine respondent's contention that the verdict is against the manifest weight of the evidence.

Respondent, relying upon *First National Bank v. Dierking* (1967), 87

Ill. App. 2d 4, 230 N.E.2d 520, asserts that there is nothing sinister about a childless widow making a joint tenancy gift to a nephew where he was the only one who was kind and helpful to her. He notes that the law does not prohibit a grantor from making a gift to a fiduciary, providing the gift is voluntarily made and is not procured by a betrayal of the trust reposed in him. He argues that the fact that he selected the particular stocks involved is of no consequence in light of the fact that it was the decedent who wished to invest in gold and he merely advised her about gold stocks.

■■ While respondent is correct in his contention that mere advice, argument or persuasion does not constitute undue influence if the grantor acts freely when he makes the gift, though it would not have been made but for the advice, argument or persuasion (*Prontzinski v. Baker* (1936), 364 Ill. 451, 4 N.E.2d 862; *Haslinger v. Gabel* (1931), 344 Ill. 354, 176 N.E. 340; *Gregory v. Gregory* (1926), 323 Ill. 380, 154 N.E. 149; *Campbell v. Freeman* (1921), 296 Ill. 536, 130 N.E. 319), the only evidence tending to justify the application of the rule in this case was presented through the testimony of respondent. The only testimony which might corroborate that of respondent was given by Ellen Hayes, who testified that decedent told respondent she wanted to provide for him after her death, and that decedent knew of the stock purchases. As the trial court noted, however, Ellen Hayes offered no testimony which tended to show that decedent, in fact, intended to place the stocks in joint tenancy with respondent; rather, these transactions always seemed to take place when respondent was alone with decedent. We are not persuaded by respondent's contention that his testimony as to his aunt's desires must be considered as true if there is no countervailing evidence. As was noted in *In re Estate of Hackenbroch* (1962), 35 Ill. App. 2d 155, 162, 182 N.E.2d 375, 378:

> "In a citation proceeding, the sole testimony of a donee as to what was done or said to him by a deceased donor is of questionable credibility and should be carefully scrutinized, as direct disproof of such declarations and conduct of the deceased donor is rarely possible. Such testimony should be considered, but sufficient corroborative evidence is required so as to make the proof of a gift clear and convincing."

Accord, *Keshner v. Keshner* (1941), 376 Ill. 354, 33 N.E.2d 877; *Naden v. Naden* (1976), 37 Ill. App. 3d 571, 346 N.E.2d 202; *In re Estate of Stahl* (1940), 305 Ill. App. 517, 27 N.E.2d 662.

Perhaps the most significant indication that respondent has failed to discharge his burden is the fact that for seven months after decedent's death respondent maintained that the stocks were the property of the estate but later claimed an interest as a surviving joint tenant. Our courts have long regarded with suspicion claims of ownership by alleged donees which are not asserted until after the death of the purported donor. *In re*

*Estate of Skinner* (1969), 111 Ill. App. 2d 267, 250 N.E.2d 295; *In re Estate of Kloss* (1965), 57 Ill. App. 2d 118, 207 N.E.2d 92; *In re Estate of Willich* (1949), 338 Ill. App. 289, 87 N.E.2d 327.

The requirement that the sole testimony of a donee must be corroborated in order to be clear and convincing becomes paramount where the donee first claims ownership after the death of the donor. Once a fiduciary relationship is shown to exist, the quantum of proof required to sustain the gift becomes even more demanding. As the *Skinner* court noted:

> "[T]he fact that * * * the donee stands in a fiduciary capacity or a confidential relationship to the donor requires that the proof necessary to establish the gift be even more clear, convincing and unequivocal. * * * Such gifts and transactions made between parties who stand in a fiduciary relationship are examined very carefully by the courts and * * * the burden of proving the gift by clear and convincing evidence is especially imposed upon the donee * * *." 111 Ill. App. 2d 267, 277, 250 N.E.2d 295, 300-01.

■■■ Respondent also contends that he has met his burden because the record is devoid of evidence that he intended to defraud his aunt. He notes that had he intended to defraud her, he would have placed his own name on the checks and, had he schemed to take undue advantage of her, the last person he would include as a joint tenant would be petitioner. We are not persuaded and note that actual or intentional fraud need not be shown where a fiduciary relationship exists. (*Clark v. Clark* (1947), 398 Ill. 592, 76 N.E.2d 446; *Schueler v. Blomstrand* (1946), 394 Ill. 600, 69 N.E.2d 328.) At best the evidence supports two theories: (1) that decedent made a gift to respondent, and (2) that respondent obtained an interest in the stocks by an abuse of the confidence reposed in him. Under such circumstances, the proof falls far short of being clear and convincing (*In re Estate of Skinner* (1969), 111 Ill. App. 2d 267, 250 N.E.2d 295); we conclude the trial court was correct in awarding the stocks to the estate.

### III

Respondent also asserts that numerous instances of misconduct by petitioner's counsel prejudiced the court against him. Essentially he contends that the frequent conduct of petitioner's counsel in asking improper questions and allusions to nonexistent evidence, with the promise of "tying it up" later and never doing so, requires reversal. We note that this was a bench trial and the prejudicial effect of any error was consequently minimized. In a bench trial, the judge is presumed to disregard improper evidence or argument. In order to rebut this presumption, it is incumbent upon the complaining party to show

affirmatively that the court's decision was tainted by such conduct and respondent has failed to do so.

## IV

We now consider petitioner's cross appeal in which she contends that the trial court erred in failing to award interest.

The court, in finding the transactions to be fraudulent, entered judgment against respondent for $39,987.40 and ordered him to turn over the stocks and accrued dividends to the estate. He was held to be liable for any deficiency, measured as the difference in the value of the stocks on the date of conversion and on the date they were returned to the estate. The court, however, refused to award interest in the event of a deficiency.

■■ The allowance of interest is within the sound discretion of the trial court, according to the equities of the case. (*Weiland Tool & Manufacturing Co. v. Whitney* (1968), 100 Ill. App. 2d 116, 241 N.E.2d 533.) As the Whitney court noted, "where one is conducting a reasonable defense to a claim of conversion, * * * this does not constitute unreasonable and vexatious delay that would permit recovery of interest." (100 Ill. App. 2d 116, 133, 241 N.E.2d 533, 542.) In light of the trial court's finding that respondent was as much the natural object of decedent's bounty as petitioner, and that there was some evidence which tended to show decedent wished to provide for respondent in return for the kind services he rendered to her, it cannot be said that respondent's defense to this claim was unreasonable or vexatious so as to require an award of interest. The determination by the trial court that the equities of this case do not support an award of interest was not an abuse of its discretion.

Petitioner also misconstrues the court's order by interpreting it as permitting respondent to retain the accrued dividends earned by the stocks. Respondent was ordered to return both the stocks and the accrued dividends with his maximum liability fixed at $39,987.40, should there be a deficiency by reason of a decrease in their value. Clearly, the estate will benefit from any increase in value of the stocks. No value has been fixed for the stocks, however, and this cause must be remanded to the trial court to ascertain their value and respondent's liability for a deficiency, if any.

## V

Petitioner's final contention is that she is entitled to costs and attorney's fees incurred as a result of respondent's false allegations and denials pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41). We disagree.

■■ Petitioner's section 41 petition was initially presented to the trial court after respondent had filed a notice of appeal. Respondent objected, contending that the trial court had lost jurisdiction to entertain the petition by reason of the pendency of this appeal. Petitioner then withdrew her motion without awaiting a ruling by the trial court and addressed her motion to this court, requesting that we remand her petition for consideration by the trial court. We note that a trial court may not lose jurisdiction to entertain such a petition following the filing of a notice of appeal. (See *Hartman v. Hartman* (1971), 2 Ill. App. 3d 163, 276 N.E.2d 56; *Sarelas v. Law Bulletin Publishing Co.* (1969), 115 Ill. App. 2d 205, 253 N.E.2d 168; but see *Brooks v. Goins* (1967), 81 Ill. App. 2d 12, 225 N.E.2d 707.) Petitioner, however, abandoned her motion in the trial court and therefore is deemed to have waived the relief sought.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed and this cause is remanded for further proceedings in conformance with this opinion.

Affirmed and remanded.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.